F. Walter McCARTY and Miriam J. McCarty and John P. Miller and Old Mill Development, Inc. and Berbiglia, Inc., Appellants,

v.

CITY OF KANSAS CITY, Missouri, A Municipal Corporation and Cecil Van Tuyl, Respondents.

No. WD 34338.

Missouri Court of Appeals, Western District.

April 17, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 29, 1984.

Application to Transfer Denied July 17, 1984.

Sherwin L. Epstein, Brian Timothy Meyers, Kansas City, for appellants.

Richard Ward, City Atty., Kathleen A. Hauser, Asst. City Atty., Judith P. Rea, Allen S. Russell, Rea, Chamberlin & Russell, Kansas City, for respondents.

Before SOMERVILLE, P.J., and CLARK and LOWENSTEIN, JJ.

CLARK, Judge.

This is a declaratory judgment suit brought to test the validity of a Kansas City ordinance affecting use of real estate owned by respondent Van Tuyl. Appellants are the owners and lessees of adjacent land. They contested enactment of the ordinance and oppose the commercial development which the ordinance authorized. The trial court ruled the ordinance properly enacted and this appeal followed. Reversed.

Essential to a discussion and understanding of the issues in the case is a delineation of the land holdings of the parties, the relationship of each parcel of property to the others and a history of the commercial development and related zoning activity.

The properties owned by appellants and that owned by Van Tuyl lie in south Kansas City a short distance east of the Missouri-Kansas state line. The tracts owned by Old Mill Development, Inc. and respondent Van Tuyl and the land occupied by Berbiglia, Inc. all front on 103rd Street. The westerly tract of Old Mill is improved with retail shops, a movie theatre and automobile parking. The easterly tract is leased by Berbiglia with a purchase option

and is used for the business of a retail package liquor store. The Van Tuyl property, which is unimproved, lies between the Old Mill and Berbiglia land. The vacant land owned by appellants McCarty and Miller abuts the Van Tuyl tract on the north. The subject land of respondent Van Tuyl is therefore bounded on three sides by the properties of appellants and on the south by 103rd Street.

Real estate along 103rd Street in the area of the subject holdings has experienced rapid commercial development since 1962 when the area was residential in character and zoning. This adaptation to commercial use was recognized by rezoning commencing in 1962. At that time, the Van Tuyl tract and the land later occupied by Berbiglia were under a common ownership. Upon application of the then owner in 1962, the Van Tuyl and Berbiglia properties were rezoned as a single tract to District CP–2, planned business center. That underlying zoning classification has remained and, at the time of trial, it was undisputed that the District CP–2 zoning was still applicable to the properties.[1]

Rezoning for a planned business center district differs from ordinary retail or business zoning in that an approved development plan is required before improvements and commercial usage may commence. The development plan, as an integral part of the CP–2 zoning, is required to show the nature and location of all improvements proposed for construction in the center. This includes buildings, driveways and walkways, parking areas, plantings and free space and any other detail needed to illustrate the features of the project as it will ultimately be completed. Construction in the planned center must conform to the development plan without substantial variation. Actual use of the land in the planned center may deviate from the development plan as approved only upon submission of a revised plan and approval of the changes, after notice and hearing, by the adoption of an ordinance by the city council.

The approved development plan for the CP–2 business center, now consisting of the Van Tuyl and Berbiglia tracts, provided for one structure on the easterly portion with the remainder of the land devoted to parking and open space. The present Berbiglia store is located in conformity with the approved development plan both as to situs and building dimensions. The development plan did indicate the use of the building to be for a restaurant but the change to a retail store within the same building did not require any plan modification. All of the land area now under the Van Tuyl ownership is shown on the approved development plan as parking and open space and is thus unavailable for erection of any structure without submission and approval of a revised development plan.

When Van Tuyl acquired the subject property, its unavailability for any use except the accessory use of automobile parking was known. Van Tuyl therefore caused a revised development plan to be prepared as a precondition to his intended use of the property for an automobile sales agency and repair garage. The plan was submitted to the city planning commission, public hearings were conducted and on January 29, 1982 the ordinance challenged in this suit was adopted by the city council. The effect of the ordinance, which approved the revised development plan, was to permit Van Tuyl to construct the automobile sales and repair facilities on the portion of the CP–2 business center originally reserved for parking and open space.

Appellants have opposed the revised development plan from its inception and have contended the proposed car agency would depreciate the values of their properties and, in the cases of Old Mill and Berbiglia, would injure their businesses. This suit followed the council action on the ordinance. In this appeal from the adverse

1. No issue is presented in this case as to the subdivision and conveyance to separate owners of unplatted land to which unitary development design is applicable by reason of CP-2 zoning. The difficulties thereby encountered, however, are graphically illustrated by this case.

result in the trial court, appellants urge three points of error. Only one requires discussion because it is dispositive of the case.

The facts associated with the point to be considered are these. The ordinance approving the revised development plan for the subject property was introduced before the council December 10, 1981. On December 28, 1981, a document protesting the ordinance and bearing the signatures of the McCartys, Miller and the president of Old Mill was filed with the city clerk. When the ordinance in question came before the city council, eight votes were cast in favor of the ordinance and four votes were cast against it. The fact is undisputed that the protestors, the McCartys, Miller and Old Mill, owned more than 40% of the land abutting the Van Tuyl property or within 185 feet from its boundaries.

Appellants contend in their point relied on that the trial court erred in failing to declare void the ordinance approving the revised development plan because the ordinance did not receive the required three-fourths majority vote in accordance with § 89.060, RSMo.1978.[2] That section becomes applicable when the specified protest against the change in zoning is filed by the owners of 10% or more of the land within the area of proposed change or within 185 feet of the boundaries of the area.

There is no contest in this case over the content of the protest, the timeliness of filing or the qualification of the protestors as owners of more than 10% of the land abutting the boundaries of the Van Tuyl tract. The issue is whether the revision in the CP–2 development plan is a change in or an amendment to the zoning regulation and restriction effective under the CP–2 zoning, and thus subject to the protest procedures.

No Missouri case has directly confronted this issue, perhaps because the planned unit development concept exemplified by the CP–2 district is of relatively recent origin. Without controlling Missouri prece-

dent, it is first appropriate to look to the applicable statutes and then to case law as available from other jurisdictions.

■■■ The powers of municipal bodies to regulate land use are derived from the state police power as that power is delegated through enactment of statutes. State ex rel. Ellis v. Liddle, 520 S.W.2d 644, 646 (Mo.App.1975). It is an elementary principle that a municipality must conform to the terms of the grant when using the powers delegated to it by the legislature. Dahman v. City of Ballwin, 483 S.W.2d 605, 608 (Mo.App.1972). It is well established in Missouri that the exercise of zoning powers delegated to cities is a legislative function. Strandberg v. Kansas City, 415 S.W.2d 737, 742 (Mo. banc 1967). A municipality exercises its legislative function only through the enactment of ordinances. Layne v. City of Windsor, 442 S.W.2d 497, 500 (Mo.1969). The delegated authority to a municipality to legislate on a subject presupposes the authority both to enact and repeal ordinances, but both may be limited by the terms of the grant of the power. Stine v. Kansas City, 458 S.W.2d 601, 611 (Mo.App.1970).

■■■ Applied to the subject of land use regulation, the foregoing authorities require the conclusion that respondent Kansas City derives only the legislative power which the statutes have granted. That power is to be exercised by the adoption and repeal of ordinances and then, subject to the limitations which the statutes impose on the grant. If there be any conflict between the statutes and the municipal ordinances, the former must prevail.

The zoning ordinance of Kansas City applicable to planned business centers (§ 65.-110, Revised Ordinances of Kansas City) under which the Van Tuyl and Berbiglia tracts were conjunctively classified District CP–2, requires the submission and approval of a preliminary development plan as a pre-condition to adoption by ordinance of the CP zoning. The development plan setting out the location and configuration of

2. All statutory references are to RSMo.1978.

all improvements on the site constitutes an integral part of the land use regulation because the zoning is adopted based on the improvements which the development plan describes. Before construction commences, the project developer must submit a final development plan and building permits will not be issued unless the final plan is in substantial compliance with the preliminary plan. Any development not conforming to the detail of the preliminary plan is precluded. Where the developer presents a project for use of the land not conforming to the preliminary plan, the case reverts to the procedure applicable when the CP zoning was first initiated including advertisement, public hearing and the enactment by the city council of a new ordinance.

In the present case, it was apparent that construction of any buildings on the Van Tuyl tract would amount to a substantial departure from the preliminary plan on which the CP–2 zoning was adopted for the property and no building permits could be obtained. The revised development plan mentioned earlier in this opinion was therefore prepared and the ordinance approving the revised plan was enacted. The affirmative votes, however, constituted less than a three-fourths majority. If, as appellants contend, a super-majority was required because of the protest by appellants as adjoining property owners, then the ordinance failed of passage as did the revised development plan and respondent Van Tuyl's entitlement to proceed with construction.

■ The authority to adopt zoning regulations and restrictions is granted to cities, towns and villages by § 89.020. All such regulations are to be imposed in accordance with a comprehensive plan, § 89.040, under which all areas of the municipality will be initially designated by a zoning ordinance as subject to particular use restrictions. From time to time thereafter, the comprehensive plan may be amended, supplemented, changed or modified as to particular tracts or the plan may be repealed. Section 89.060. As to any such change in the comprehensive plan or in regulations, re-

strictions or boundaries, if the owners of 10% or more of the land or of abutting lands within a certain distance protest, the change is effective only if adopted by a three-fourths vote of the members of the municipal legislative body, § 89.060.

Respondent Kansas City has recognized the applicability of § 89.060 to its zoning and planning function by the language of § 65.350.2, Revised Ordinances of Kansas City, which reads as follows:

"2. In the case of a protest against any zoning change, duly signed and acknowledged by the owners of ten (10) percent or more, either of the areas of the land (exclusive of streets and alleys) included in such zoning change or within an area determined by lines drawn parallel to and one hundred eighty-five (185) feet distant from the boundaries of the district proposed to be changed, such amendment shall not become effective except by the favorable vote of three-fourths ($\frac{3}{4}$) of all members of the city council."

The position of respondent city in administering its zoning law and that of respondent Van Tuyl on this appeal is and has been that the protest procedures described in § 89.060 and in the ordinance quoted above do not apply to revisions in development plans for CP districts. The contention is grounded essentially on the concept of what constitutes a zoning change. Respondents point out that a change in a development plan is not a change or modification in zoning because the CP district designation survives, only the internal composition of the project is varied. Moreover, the comprehensive zoning map is unaltered and continues after as before the change to show the area zoned CP–2 with all permissible uses associated with that classification.

■ The content of Kansas City Ordinance 65.350.2 is somewhat at variance from § 89.060. The statute makes no reference to a zoning change, the language of the ordinance. Instead, the statute speaks of amendment, supplement, change or modification to regulations, restrictions and boundaries which, in turn are the controls

on erection, construction, reconstruction, alteration or use of buildings, structures or land specified in § 89.030. If the position of respondents depends on a narrow usage and interpretation of the term "zoning change," as it appears to do, then on the authorities previously cited, the broader language of the statute imposing the protest provision on all cases of change or modification in use restrictions must prevail. The grant of the legislative power to municipalities is subject to the limitations imposed by the statute and Kansas City may not broaden the power by the content of its own ordinances on the subject.

■ The facts of this case speak for themselves as to whether adoption of the Van Tuyl revisions to the preliminary development plan amounts to a change in existing regulations and restrictions on erection of buildings or use of land. The preliminary plan showed no buildings at all on the tract which was to be used only for automobile parking and open space. The amended plan authorizes a 15,000 square foot automobile sales agency building with sixteen service bays and related facilities. The change is within the language of § 89.060 and the ordinance was subject to a required three-fourths majority vote when the protest was lodged.

Some tacit recognition that deviation from a prior development plan in a CP district partakes of a zoning change is found in the ordinances of Kansas City applicable where the final development plan does not conform to the intent of the preliminary plan. Kansas City Ordinance 65.110 recites:

"If the final development plan being reviewed fails to conform to the intent of the preliminary plan submitted in support of the rezoning, such final development plan may be submitted to the city plan commission as an amended preliminary plan upon which the commission shall advertise and hold a public hearing. The procedure shall be the same as for the original preliminary plan, including the amendment of the previous ordinance adopting said preliminary plan."

The city has recognized by the quoted section that a substantial deviation from the development as proposed when the CP zoning was adopted required the procedural counterpart of the original zoning enactment. The reservation of authority in the city council to approve an amendment to the original development plan by ordinance is indicative of a legislative function which in turn marks the action as being taken pursuant to the statutory grant of police powers. It is illogical to argue that a developer must duplicate the original zoning process when the development plan is amended but yet be immune from the protest strictures.

Independent research has disclosed few decisions from other states interpreting the effect of statutory protest provisions in cases where a planned unit development is materially altered after approval of a preliminary plan. One case, however, addresses a generally comparable situation to that at issue here. The principal difference, not pertinent to the theory of decision, is between commercial and residential planned unit developments.

In *Millbrae Association For Residential Survival v. City of Millbrae*, 262 Cal. App.2d 222, 69 Cal.Rptr. 251 (1968), a planned development of three high-rise apartments and seven quadplexes was approved in accordance with a "Project General Plan" and the land was rezoned to district PD. Subsequently, the developer presented a "Project Precise Plan" calling for seven additional apartments in the high-rise buildings, reduction in size of an associated golf course, increase in the number of parking spaces and relocation of two of the high-rise buildings. The issue raised by the litigation was whether the change in plan was merely a variance which could be approved by the planning commission or was a rezoning requiring city council action. Holding the changes to amount to a rezoning, the court expressed the following views which are particularly relevant to the Van Tuyl amendment to the approved development plan in the subject case at 69 Cal.Rptr. 268:

"These were specific elements of the general plan incident to the zoning of the PD district and their change and alteration amounted to a rezoning of the district. We are persuaded to this conclusion by the very nature of the PD district. Although the creation of such a district allows for greater flexibility and diversification in the location of structures and other site qualities and their uses, once these elements are delineated in the general plan they constitute material and indispensible attributes of the district itself. In other words, the zoning characteristics of the district consist not only in the classification of the district to PD but in the components of the general plan accompanying the application for the creation of the district and any subsequent amendments to the plan that may properly be adopted. Accordingly, any substantial change or alteration in the actual physical characteristics of the district and its configuration amount to a rezoning of the district and may only be accomplished pursuant to the provisions of the state statutes and the local ordinances consistent therewith providing for zoning and rezoning."

It is not possible to conceive of a more fundamental change in land use than to convert land dedicated to open space without any structures to the intensive use of an automobile sales and repair facility proposed by Van Tuyl. The amendment to the approved development plan was the equivalent of rezoning and a three-fourths vote of the city council was required upon the filing of appellants' protest. The trial court erred in reaching a contrary result.

The judgment is reversed and the cause is remanded with direction that judgment be entered declaring Ordinance No. 53561 of the City of Kansas City, Missouri void and for such other relief as is consistent with the views here expressed.

All concur.