**MONSANTO COMPANY,**
**Plaintiff/Respondent,**

v.

**Russell COX, et al.,**
**Defendants/Appellants.**

**No. 57282.**

Missouri Court of Appeals,
Eastern District, Division Three.

June 19, 1990.

484

Donald J. Mehan, Jr., Theodore A. Zimmermann, Moline, Ottsen, Mauze, Leggat & Shostak, St. Louis, Thomas E. Burkemper, Burkemper & Brighoff, Troy, for defendants/appellants.

Albert A. Michenfelder, Jr., Steven W. Koslovsky, Ziercher & Hocker, P.C., St. Louis, for plaintiff/respondent.

SMITH, Judge.

The members of the Board of Equalization of Lincoln County appeal from the judgment of the trial court in reversing the Board's decision denying Monsanto a construction permit. Monsanto sought to erect, as an addition to its levee system, a series of "hardpoints"[1] to protect its research farm from erosion damage caused by the flooding of the Cuivre River which adjoins Monsanto's property. We affirm.

After an initial hearing by the Board, it refused Monsanto's request for a permit. On appeal the matter was remanded to the Board for further proceedings because of a conflict of interest by one of the members of the Board who participated in the hearing and the determination. Following a

1. "Hardpoints" are sections of rock rip rap placed into the levee in place of soil which is removed. Because rock is less subject to erosion than soil, the hardpoints serve to protect the levee from erosion during floods.

second hearing the Board again refused the construction permit. The Board's action was based upon a Lincoln County ordinance dealing with flood control enacted July 20, 1982. The Board made its finding that the proposed construction would "raise flood levels during occurrence of the base flood discharge approximately one (1) foot." The Lincoln County ordinance provides that such construction is not permitted if such construction would cause "any increase in flood levels during occurrence of the base flood discharge."

Authority for this ordinance is provided by Secs. 49.600–49.615 RSMo 1986, originally enacted in 1980 with an effective date of May 9, 1980. Those sections had as their purpose the allowance, to counties bordering the Mississippi or Missouri Rivers, of authority to require compliance with the National Flood Programs and thereby be eligible for the national flood insurance program. L.1980, p. 239. The original statute provided:

"2. The provisions of this section shall not apply to land, used or to be used for the raising of livestock, crops, orchards or forestry, nor shall this section apply to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures used for such purposes on these lands and shall not apply to underground mining where entrance is through an existing shaft or shafts or through a shaft or shafts in an area not within the area shown on the flood hazard boundary map, which will not increase flood heights." Vernon's Ann.Mo.Stat. 49.600 (Historical note).

Sec. 49.605 provides: "No permit required by the provisions of order or ordinance regulations adopted pursuant to the provisions of Sections 49.600 to 49.615 shall be denied an applicant if the proposed construction, use or other development will not raise the flood elevation of the one hundred year flood level more than one foot ..." The "base flood discharge" referred to in the Board's finding and in the Lincoln County ordinance is the same as the "one hundred year flood level."

In 1983 Section 49.600 was amended effective March 15, 1983. It changed the reference from the "national flood programs" to the Federal Emergency Management Agency and provided for a different procedure for submitting the issue to the voters. Originally the voters could vote out the ordinance regulations through the initiative. The 1983 amendment required voter approval prior to enactment of the ordinance.

Subdivision 2 of the original Sec. 49.600 was renumbered 3. Added to the first sentence following the words "shall not apply to" were the words "the incorporated portions of the counties, or to". In all other particulars the language of original subdivision 2 and renumbered subdivision 3 are identical. A new subdivision 4 was added which reads: "Nothing contained herein shall affect the existence or validity of an ordinance which a county has adopted prior to March 15, 1983."

■ In *St. Charles County v. Dardenne Realty Company*, 771 S.W.2d 828 (Mo. banc 1989) the Supreme Court dealt with Sec. 64.620 RSMo 1986, a counterpart to Sec. 49.600. Based upon the statutory language there, it held that permit requirements do not apply to land used for the raising of crops. The farmland exemption before us is virtually identical to that found in *Dardenne*. While the Board contends that Monsanto's research farm is not a farm under the statutory exemption the record clearly establishes that it is a farm under any possible definition of that term and that it is used for raising crops. On the face of the statute no permit is required for the construction proposed by Monsanto.

■ The Board argues that the exemption does not apply for several reasons. First it contends that the last phrase of Sec. 49.600.3 "which will not increase flood heights" applies to all of subdivision 3. We are unable to so construe the language. Four different exemptions are provided in subdivision 3. The first two, incorporated portions of the county and farm land, are specific land areas removed from operation of the statute. Adding the last phrase to

those designated land areas makes no sense grammatically. The section would read for instance "shall not apply to the incorporated portions of the counties ... which will not increase flood heights." The third section exempts erection of farm buildings or farm structures used for such purposes on "these" lands. The fourth section deals with mine shafts and grants a limited exemption to certain such shafts which do not have the potential of affecting flood levels. The composition of subdivision 3 indicates that the last phrase deals only with the mine shaft exemption.

The Board further contends that the provisions of paragraph 4 of Sec. 49.-600 save its ordinance from the limitations of Sec. 49.600 and 49.605. It is axiomatic that the exercise of local government power must conform to the terms of the applicable enabling statute. *McCarty v. City of Kansas City*, 671 S.W.2d 790 (Mo.App. 1984) [1–5]. An ordinance may enlarge upon the provisions of a statute by requiring more than a statute requires but it may not prohibit what the statute permits or permit what the statute prohibits. *Mager v. City of St. Louis*, 699 S.W.2d 68 (Mo. App.1985) [2]. The Lincoln County ordinance was enacted under the authority of Sec. 49.600 et seq. as passed in 1980. That statute provided the exemption for farm land and the one foot exemption. The evidence at the hearing at most established the construction would raise the flood level "about a foot." There was no evidence the construction would raise the level "more than one foot." Further the land involved was farm land and was not subject to the ordinance. The Lincoln County ordinance could not prohibit what the statute permits. To the extent it purported to do so it was invalid *ab initio* as to those prohibitions. The Board in its interpretation of the ordinance has prohibited what the enabling statute permits. The purpose of the 1983 amendment and the addition of the savings provision was to make it unnecessary for counties to reenact ordinances passed pursuant to the 1980 statute. It was not the intention of the savings provision to validate provisions of ordinances that did not comply with the statutory grant of authority under which they were enacted. The Board erroneously applied its ordinance.

Judgment affirmed.

SATZ, P.J., and GRIMM, J., concur.