STATE ex rel. HELUJON, LTD., Appellant,

v.

JEFFERSON COUNTY, et al., Respondents.

No. 71532.

Missouri Court of Appeals, Eastern District, Division Three.

March 10, 1998.

Robert Schultz, Mary B. Schultz, Descher & Schultz, St. Louis, for appellant.

Thomas B. Weaver, Timothy J. Tryniecki, St. Louis, for respondent.

AHRENS, Presiding Judge.

Helujon, Ltd. ("Helujon") appeals from a judgment upholding a Planned Unit Develop-

ment ("PUD")[1] zoning and denying its requests for declaratory and injunctive relief, administrative review, and for writs of certiorari and prohibition. We affirm and remand.

Kimmswick Properties, Inc. owns a 46.5 acre parcel of land ("subject property")[2] along the Mississippi River in an unincorporated area of Jefferson County, Missouri. Lady Luck Kimmswick, Inc. ("Lady Luck") has an option to lease the subject property for the purpose of developing and operating a gaming and hotel facility.

Helujon owns real estate abutting the subject property at its southern boundary. Helujon also owns numerous other parcels of real estate in and near the city of Kimmswick. Luciana Ross owns and is sole officer of Helujon. The Helujon real estate has never been developed. In fact, the corporate representative, Ms. Ross, testified the real estate was purchased in order to "protect the town as much as possible" from development. The city of Kimmswick is located within one and one-half miles of the southern boundary of the subject property.

Jefferson County approved riverboat gambling in 1993. Thereafter, the county commission issued a request for proposals for a riverboat gambling operation. Lady Luck submitted a proposal. On September 17, 1993, Lady Luck entered into a contract with Jefferson County. The Jefferson County Commission designated Lady Luck as the applicant for Jefferson County to the Missouri Gaming Commission for a riverboat gambling license.

On May 12, 1994, the Jefferson County Commission passed and approved an order which granted a PUD zoning of the subject property and approved a site plan for casino development. The Kimmswick Historical Society filed a lawsuit challenging the order. On October 24, 1994, Kimmswick Properties filed a second application for a PUD zoning and for approval of a preliminary site plan. The original lawsuit was dismissed as moot.

The staff of the Jefferson County Planning and Zoning Commission submitted a report to the planning and zoning commission, recommending approval of the requested rezoning and the preliminary site plan showing the proposed uses and concept, subject to certain conditions. The city of Kimmswick adopted a resolution protesting approval of the proposed casino development and mailed the protest to Jefferson County.

The planning and zoning commission considered the application for the PUD zoning at a public hearing on November 10, 1994. The mayor of Kimmswick presented Kimmswick's protest at the hearing. Despite the protest, the planning and zoning commission voted to recommend approval of the PUD zoning subject to the following conditions set forth in the staff report and one additional condition as follows:

1. The conditions set forth by the reporting agencies shall be followed.

2. A proposed set of covenants and restrictions to provide for continued maintenance of roadways and drainage improvements shall be submitted to the Planning Department.

3. The developer shall be required either to have all improvements in place or provide escrow for remaining improvements prior to approval of the final plat. The proposed future entrance to the site must be completed prior to occupation of the proposed hotel or the conduct of gambling operation.

4. A detailed traffic analysis must be submitted to the Jefferson County Planning and Zoning Department for review.

5. Prior to development the following must be obtained:

 a. A floodplain development permit from Jefferson County

 b. Any required permits from the U.S. Corps of Engineers

---

1. A PUD is a special zoning classification permitting a site to be developed under a unified plan that allows flexibility in development while providing the zoning authority with a great deal of control over the development.

2. The subject property is in the Agricultural Rural-5 acres zoning district. The AR-5 zoning is broad enough to allow a variety of uses, including churches, cemeteries, slaughterhouses, lumber yards, and landfills.

c. Any required permits from Union Pacific Railroad

d. An entry permit from the Missouri Highway Department

6. A landscape buffer plan shall be submitted to the Planning and Zoning Department for review.

7. All issues of concern raised in the analysis of the preliminary plat must be resolved with the Planning and Zoning Department.

On November 29, 1994, the Jefferson County Commission unanimously passed a motion that the application be approved "with conditions and stipulations as issued in the forthcoming order." On December 15, 1994, the county commission approved Order No 12–15–94A ("rezoning order") by a vote of two to one. The rezoning order contains no express conditions.

In April 1995, Lady Luck cleared trees and shrubs from the subject property at a cost of $17,605.00 A residence on the site was moved off-site. The property was staked for the purpose of preparing a preliminary construction survey. Kimmswick Properties placed a construction trailer on the subject property at a cost of $12,000.00 to $15,000.00. The trailer has stood, unoccupied, since at least May 1995. It has since been vandalized. Water, sewer, gas and electricity running to the trailer were disconnected. No physical changes have occurred on the subject property since May 1, 1995.

Helujon brought this suit against Jefferson County and the Jefferson County Commission. Kimmswick Properties and Lady Luck intervened. The four-count petition sought: 1) a declaratory judgment holding the rezoning order illegal and invalid; 2) an injunction against development of the gaming facility; 3) administrative review; and 4) a writ of certiorari. On November 16, 1995, the trial court dismissed counts two, three, and four. Helujon later added counts seeking a declaratory judgment that the rezoning order had expired and a writ of prohibition to prohibit the issuance of any development permits.

Ms. Ross testified that she opposed the development because she felt it would have a bad effect on the restored town. She did not present evidence of any actual damages that would be suffered. Barry Hogue, an expert witness, testified the rezoning order was reasonable, consistent with Jefferson County's comprehensive development plan, and not likely to have any negative effect on the value of the surrounding property. Hogue testified that he based his opinion as to the reasonableness of the PUD zoning, in part, on the conditions recommended by the planning and zoning staff.

The trial court entered judgment against Helujon on all claims submitted at trial. The trial court declared the rezoning order to be valid, enforceable, and reasonable.

During oral arguments before this Court, counsel for Kimmswick Properties and Lady Luck stipulated that the planning and zoning commission's "conditions" applied to the county commission's approval of the rezoning order. By a letter to this court dated December 5, 1997, counsel of record for Jefferson County, the County Commission of Jefferson County, and the individual commissioners similarly stipulated that the conditions set out by the planning and zoning commission, in its recommendation for approval of the PUD zoning, apply to the rezoning order.

## STANDARD OF REVIEW

The parties disagree on the appropriate standard of review. Helujon argues the county commission acted in an administrative capacity in approving both the PUD zoning and the preliminary site plan. Respondents argue the PUD zoning falls under the ambit of legislative zoning. The Western District addressed a similar issue in both *Heidrich v. City of Lee's Summit*, 916 S.W.2d 242 (Mo. App.1995) and *McCarty v. City of Kansas City*, 671 S.W.2d 790 (Mo.App.1984).

The power of a municipality or county to regulate land use is derived from the state police power as that power is delegated through the enactment of statutes. *McCarty*, 671 S.W.2d at 793. Missouri falls among the large group of jurisdictions that views the exercise of zoning power as a legislative function, rather than a quasi-judicial or

administrative function. *Heidrich,* 916 S.W.2d at 248.

Upon review, this Court may reverse a legislative action "only if arbitrary and unreasonable, meaning that the decision is not 'fairly debatable.' " *Heidrich,* 916 S.W.2d at 248 (*quoting Summit Ridge Dev. Co. v. Independence,* 821 S.W.2d 516, 519 (Mo.App.1991)). If a decision bears no substantial relationship to the public health, safety, morals, or general welfare, this Court will consider it arbitrary and unreasonable. *Heidrich,* 916 S.W.2d at 248. Zoning ordinances are presumed valid, and uncertainty about the reasonableness of a zoning regulation must be resolved in the government's favor. *Id.* Additionally, when reviewing legislative actions, the scope of review is not limited to the record presented to the legislative body. *Id.*

Helujon argues that a PUD zoning classification differs from the traditional concept of Euclidian zoning because it contains non-legislative components, thus requiring an administrative standard of review. We agree with Helujon's assertion that not every act of a zoning authority is legislative. *See Bowman v. Greene County Commission,* 732 S.W.2d 223, 225 (Mo.App.1987). Helujon, however, did not cite a single authority to support its contention that approval of a PUD classification by a county commission is an administrative act.

This Court is aware that Helujon's argument, that approval of a PUD classification is an administrative act, is not completely ungrounded.[3] The PUD is a relatively recent zoning concept, representing a modern, flexible approach to progressive land use planning. *McCarty,* 671 S.W.2d at 793; *City of Tuscaloosa v. Bryan,* 505 So.2d 330, 335 (Ala. 1987). Nonetheless, it has been decided approval of a PUD classification is a zoning decision, requiring the same standard of review as the zoning or rezoning of an area. *Bryan,* 505 So.2d at 337; *Peachtree Development Co. v. Paul,* 67 Ohio St.2d 345, 423

N.E.2d 1087 (1981); *Gray v. Trustees, Monclova Township,* 38 Ohio St.2d 310, 313 N.E.2d 366 (1974).

Similarly, the Western District has treated approval of PUD classifications as rezoning, requiring a legislative standard of review. *Heidrich,* 916 S.W.2d at 248–49; *McCarty,* 671 S.W.2d at 793. The parties stipulated that the PUD classification "approved a change in the zoning classification of the subject property." Helujon's amended petition repeatedly alleges that the county commission effected "rezoning" or a "change in the zoning". Moreover, the prayer for relief in every count refers to the "rezoning". We agree with the Western District. Approval of a PUD classification is a legislative act of rezoning.

Helujon further contends the county commission acted in an administrative capacity when it approved the preliminary site plan, triggering at least in part an administrative standard of review. Typically, review and approval of a preliminary plat is administrative, not legislative. *See State ex rel Schaefer v. Cleveland,* 847 S.W.2d 867, 870 (Mo.App.1992); *Basinger v. Boone County,* 783 S.W.2d 496, 498 (Mo.App.1990). Neither *Schaefer* nor *Basinger* involve the submission of a site plan to obtain approval of a PUD zoning classification.

Unlike Euclidian zoning, approval of a PUD zoning classification is usually contingent on site plan approval. The plan gives the county commission full knowledge of what they are asked to approve before they grant a zone change. Without a site plan, the governing body charged with making a decision to grant a PUD zoning classification would be doing so in a vacuum. *Frankland v. City of Lake Oswego,* 267 Or. 452, 517 P.2d 1042, 1051 (1973).

When a legislative body approves a PUD zoning classification it also approves a site plan. This concept is supported by *McCarty v. City of Kansas City,* 671 S.W.2d

---

3. *See McCallen v. City of Memphis,* 786 S.W.2d 633 (Tenn.1990) (resolution of city council granting planned unit development was an administrative action, for purposes of remedy of writ of certiorari); *Peachtree Development Co. v. Paul,* 67

Ohio St.2d 345, 423 N.E.2d 1087, 1094 (1981) (Brown, J., dissenting) (disagreeing with majority which held resolution approving a Community Unit Plan was a legislative act).

790 (Mo.App.1984) (holding an amendment to the approved development plan is the equivalent to rezoning). "[T]he zoning characteristics of the district consist not only in the classification of the district to [PUD] but in the components of the general plan accompanying the application for the creation of the district and any subsequent amendments to the plan that may be properly adopted." *Id.* at 796 (*quoting Millbrae Association for Residential Survival v. City of Millbrae*, 262 Cal.App.2d 222, 69 Cal.Rptr. 251, 268 (1968)).

■ The county commission's inclusion of site plan approval in its order does not mandate varying standards of review. The development plan is an integral part of the regulation because the zoning classification is adopted based on the improvements which the development plan describes. We view the approval of the PUD zoning classification as a legislative act encompassing the approval of the site plan or development plan. On appeal of a zoning decision, this Court reviews the judgment of the trial court de novo, but deference is accorded to the trial court's ability to assess credibility. *J.R. Green Properties, Inc. v. City of Bridgeton*, 825 S.W.2d 684, 686 (Mo.App.1992).

## POINTS ON APPEAL

Helujon first contends the trial court erred in dismissing Counts II, III and IV of its First Amended Petition, in which Helujon sought to attack the rezoning order by way of injunction, administrative review, and a writ of certiorari, respectively. In reviewing a trial court's grant of a motion to dismiss, this Court allows the pleadings their broadest intendment, treats all allegations as true, and construes the allegations in a manner favorable to the plaintiff. *West Central Missouri Regional Lodge No. 50 v. Board of Police Comm'rs.*, 939 S.W.2d 565, 566 (Mo. App.1997).

■ The trial court did not err in characterizing and reviewing the rezoning order as a legislative decision for the reasons stated above. Challenges to zoning, rezoning and refusals to rezone in Missouri must be by declaratory judgment or injunction. *See Hoffman v. City of Town & Country*, 831 S.W.2d 223 (Mo.App.1992). Helujon prayed

for a declaratory judgment in Count I of its Amended Petition and that count was tried.

■ Judicial review and certiorari proceedings are available for the review of administrative actions. A certiorari proceeding is not an appropriate method for testing the validity of a legislative act such as a zoning or rezoning ordinance. *State v. City of Raytown*, 289 S.W.2d 153 (Mo.App.1956). Similarly, as a legislative act, rezoning is not subject to administrative review. *Salameh v. County of Franklin*, 767 S.W.2d 66, 68 (Mo. App.1989). Therefore, both Count III and Count IV failed to state a claim for relief as a matter of law. Both counts were properly dismissed.

■ Count II sought an injunction to prevent the "enforcement" of the rezoning order. We disagree with the respondent's argument that injunctive relief is always an improper remedy in contesting the validity of a legislative action. *See H.Fichman Co., Inc. v. City of Kansas City*, 800 S.W.2d 24, 27–28 (Mo.App.1990) ("An injunction may lie to prohibit the enforcement of a City Ordinance"); *Sanders v. City of Bridgeton*, 703 S.W.2d 76 (Mo.App.1985); *State ex rel. City of Maplewood v. Crandall*, 569 S.W.2d 338, 340 (Mo.App.1978).

■ We, however, find Helujon suffered no prejudice by the dismissal of Count II. *Lewis v. Wahl*, 842 S.W.2d 82, 84–85 (Mo. banc 1992) (error must materially affect the merits of the case to reverse). The trial court addressed the same issues on the merits in entering judgment for all of the respondents on Count I, requesting a declaratory judgment. A right to injunction will lie only if the ordinance is found unconstitutional or invalid and its enforcement will result in an irreparable injury to a property right. *Burnau v. Whitten*, 642 S.W.2d 346 (Mo. banc 1982). The trial court's decision to strike the count requesting injunctive relief did not materially affect the merits of the action. *See Benton v. City of Rolla*, 872 S.W.2d 882 (Mo.App.1994). Point denied.

■ In its second point, Helujon contends the trial court erred by failing to render findings of fact on specific issues clearly

and unequivocally requested by Helujon. Rule 73.01(a)(3). Helujon argues these facts would be dispositive of the validity of the rezoning order, requiring remand for production of such findings. *Hammons v. Ehney*, 924 S.W.2d 843, 849 (Mo. banc 1996). A trial court is required to render findings of fact on controverted fact issues when properly requested. *McMickle v. McMickle*, 862 S.W.2d 477, 483 (Mo.App.1993). Reversal for failure to make requested findings of fact is appropriate only if the appellant is denied the opportunity for meaningful appellate review. *Id.* at 484.

Helujon requested that the trial court make findings of fact on whether the city of Kimmswick enacted a resolution objecting to the proposed casino development and whether it filed the protest with the county before the county commission approved the rezoning order. The trial court made the requested findings. Finding 23 states, that on June 14, 1994, the city of Kimmswick passed and approved a resolution, signed by the mayor of Kimmswick and the city clerk, and submitted to Jefferson County. The finding refers to Exhibit 18, which specifically states that Kimmswick protested the rezoning. It is undisputed that the protest was filed prior to approval of the rezoning order. The parties' stipulation states, under the heading "Chronology of Events Preceding Order No. 12–15–94A.", that Kimmswick's resolution was submitted to the county.

Helujon also requested a finding as to whether the county commission spread its reasons for approving the rezoning order on the record. For the reasons set out hereafter, the county commission was not required to spread its reasons on the record. Moreover, under our standard of review, the failure to do so does not hinder meaningful appellate review.

Additionally, Helujon requested findings as to whether the planning and zoning commission's recommendation was subject to conditions, and whether the county commission's approval was unconditional. This point is now moot in light of the respondents' stipulations that the conditions are part of the rezoning order.

In its third point, Helujon contends the county commission failed to abide by its own rules and regulations and state enabling legislation in enacting the rezoning order. Specifically, Helujon argues the county commission did not adopt the conditions set out in the planning and zoning commission's recommendation and the county commission failed to abide by the county's subdivision regulations, as well as Sections 64.245 and 64.830 RSMo.1994.

A county receives its authority to enact zoning regulations from the State of Missouri through enabling statutes. *See State v. American Telephone & Telegraph Co.*, 280 S.W.2d 134, 137–38 (Mo.App.1955); *State ex rel. Casey's General Stores, Inc. v. City Municipality of Louisiana*, 734 S.W.2d 890, 895 (Mo.App.1987). If a county fails to comply with the enabling statute, its zoning action is void and unenforceable. *Id.* Similarly, requirements and procedures set out in the local zoning ordinance should be followed. *See Temple Stephens Co. v. Westenhaver*, 776 S.W.2d 438, 441 (Mo.App.1989); *State v. Arnold*, 149 S.W.2d 384, 387 (Mo.App.1941).

The county zoning order in effect at the time the rezoning order was adopted by the county provides that "[n]o planned unit development shall be adopted without the affirmative recommendation of the planning and zoning commission." Helujon argues the planning and zoning commission's recommendation was expressly subject to certain enumerated, specific conditions, which the county commission failed to include in its rezoning order. This point is now moot in light of the respondents' stipulation that the conditions accompanying the affirmative recommendation of the planning and zoning commission now pertain to the rezoning order.

Similarly, Helujon argues the respondents failed to comply with the county's subdivision regulations and the state enabling statute for those regulations. Helujon believes the trial court erred in determining those regulations did not apply. We disagree.

The county commission is authorized to enact "subdivision regulations", relating primarily to the creation of new parcels of land

and secondarily to location and width of streets, building lines, lot sizes, and the like. Section 64.825 RSMo 1994. The county commission is empowered by a different section to prescribe zoning regulations, relating to "the height, number of stories, and size of buildings, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, the location and use of buildings, structures and land for trade, industry, residence or other purposes." Section 64.850 RSMo 1994. The trial court specifically found the rezoning order does not constitute a "subdivision of land" within the meaning of Section 64.830. Helujon did not contest that finding. Helujon never alleged that any subdivision was created, modified, or extinguished by the rezoning order.

 In its brief before this Court, Helujon argues for the first time that the county commission failed to adhere to Section 64.245 RSMo 1994 because the county commission effectively overruled a decision of the planning and zoning commission on a plat and did not spread its reasons for doing so upon the minutes. The county commission did not overrule a decision of the planning and zoning commission. Furthermore, Section 64.245 is a provision with terms similar to Section 64.830 RSMo 1994, but applicable only to counties that have not adopted the alternative planning and zoning scheme that is in force in Jefferson County. Arguments on substantive issues, raised for the first time on appeal, must be rejected. *Artman v. State Bd. Of Registration for the Healing Arts,* 918 S.W.2d 247, 252 (Mo. banc 1996).

 Helujon also argues that Section 64.830 and the county subdivision regulations apply. If the council of any municipality files an objection to the approval of a plat, both Section 64.830 and the county subdivision regulations require a two-thirds vote of the county commission to approve the plat as well as the reasons for approval to be spread upon the records and certified to the planning and zoning commission. In the instant case, we find both Section 64.830 and the

county subdivision regulations to be inapplicable.

Approval of the rezoning order did not trigger the requirements set out in Section 64.830 and the county subdivision regulations. These provisions are only applicable if there is to be a "subdivision" of land. The trial court correctly found that no "subdivision" of land was involved with the approval of this rezoning order.

In its reply brief, Helujon concedes no "subdivision" of land is involved. Helujon argues instead that "Section 2.3 of the County's Subdivision Regulations is not limited to 'subdivisions.' " Section 2.3 states "no plat *or* subdivision of land" (emphasis added) may be filed unless there is compliance with the aforementioned county requirements. Helujon contends a plat was required because the subject property is to be used for non-residential purposes where the property was vacant. Art. II, Section 2.1(D), Jefferson County Subdivision Regulations. Definitions set out in the county subdivisions regulations support a finding the county subdivision regulations are not controlling in the instant case.

A plat is defined as "a map, plan or layout of a *subdivision* indicating to scale the location and boundaries of individual properties." Art. III, Section 3.2, Jefferson County Subdivision Regulations (emphasis added). Therefore, the term "plat" as used in Section 2.1 and 2.2 contemplates in each instance the subdivision of land. We find that the regulations are not applicable to the legislative action of zoning the land to a PUD, not involving a subdivision, merely because a site plan was approved by the county commission.[4]

 Helujon directs us to the testimony of Jefferson County's planning director, who testified the subdivision regulations applied because there was a change in land use. Helujon relies on *Eubanks v. Board of Adjustment, Kirkwood,* 768 S.W.2d 624, 627 (Mo.App.1989), arguing we should defer to the interpretation of the county official charged with the day-to-day interpretation

---

4. In the instant case, we refrain from determining whether the subdivision regulations would be applicable upon approval of a PUD and site plan proposing subdivision of land.

and application of the regulations. We give consideration to the construction placed upon the statute by the county's planning director, but such construction is not binding on this court. *See Moore v. State Tax Comm'n,* 862 S.W.2d 407, 409 (Mo.App.1993); *Hudson v. State Security Ins. Co.,* 555 S.W.2d 859, 861–62 (Mo.App.1977). The testimony of the county's planning director is contrary to the plain language of the statute and is therefore, rejected.

■ Helujon also contends the trial court erred in affirming the rezoning order because the county commission approved the rezoning order for reasons unrelated to those permitted in the state enabling statutes and the County's zoning order. The County's zoning order requires that there be "specific design benefits" to warrant the PUD zoning designation. Art. XVI, Section 11, Jefferson County Zoning Order. The state enabling statute authorizes the county to impose zoning regulations for the purpose of promoting health, safety, morals, comfort or general welfare. Section 64.850 RSMo 1994. Helujon claims the county commission approved the rezoning order on hopes for economic benefits to the County. The county commissioners voting in favor of the rezoning order did testify that a contract between Jefferson County and Lady Luck requires payments to Jefferson County of $350,000 annually. In addition, the two commissioners expressed hope that the County would benefit through increased employment and business revenue.

■ In the case of legislative rezoning, the reviewing court is not confined to nor concerned with the record made before the legislative body. *Hoffman v. City of Town & Country,* 831 S.W.2d 223, 224–25 (Mo.App.1992). The reasons for passing the rezoning order are not at issue. The reviewing court does not review the "record" before the legislative body. *Heidrich v. City of Lee's Summit,* 916 S.W.2d 242 (Mo.App. 1995). Instead, this Court independently assesses the validity of the zoning de novo. This Court is concerned only with the end result, namely whether the rezoning order is fairly debatable and reasonable. It is Helujon's burden to prove the rezoning order is not reasonable. *J.R. Green,* 825 S.W.2d at

686. Helujon did not meet this burden. Hogue testified that the rezoning order was reasonable. The trial court did not err in deciding Helujon offered no evidence that the rezoning order constituted inappropriate or unreasonable zoning or land use planning. The fact that the commissioners considered economic benefits is not decisive. "The pertinent inquiry is thus not what matters may have been literally or physically before the [Commission] or present in the lawmakers' minds...." *Desloge v. St. Louis County,* 431 S.W.2d 126, 132 (Mo.1968). Point denied.

■ Helujon also argues the rezoning order was rendered void by subsequent events. Helujon contends the trial court erred in finding "development" commenced within twelve months after approval of the rezoning order. Helujon further contends the trial court erred in upholding the rezoning order even after material changes in the development and the developer occurred.

The county zoning order requires that development of a PUD "start within twelve months" of its approval. Art. XVI, Section 6, Jefferson County Zoning Order. Helujon argues the limited physical changes to the site did not constitute "development" of the PUD. Within twelve months of approval, Lady Luck cleared the land of trees and shrubs at a cost of $17,605.00, removed a residence, and moved a construction trailer onto the site. None of these actions required a PUD, but could be viewed by the trial court as the start of development of a PUD. Additionally, the subject property was staked for the purpose of a construction survey to identify areas that could not be disturbed, such as wetlands and archaeological sites. Moreover, Lady Luck undertook engineering and designing of the project at a cost of $143,-000.00 and received a flood plain development permit.

■ When a term in a zoning ordinance is capable of multiple interpretations, weight should be given to the interpretation which is least restrictive upon the rights of the property owner to use land as he or she wishes. *St. Louis County v. Taggert,* 866 S.W.2d 181, 182 (Mo.App.1993). Jefferson County's gen-

eral zoning order defines "development" as "the construction, reconstruction, conversion, structural alteration, relocation, or enlargement of any structure; excavation, landfill, or land disturbance; and any use or extension of the use of land." The trial judge could have determined the actions taken by Lady Luck fall within the parameters of that definition.

Other jurisdictions have viewed any substantial overt act as commencement of development because acts like removing shrubbery are a necessary preliminary to the overall project. *Gulf Oil Corp. v. Vogel,* 50 N.J.Super. 324, 142 A.2d 237, 238 (1958); *See also City of Lincoln v. Townhouser, Inc.,* 248 Neb. 399, 534 N.W.2d 756 (1995); *City of Ellsworth v. Doody,* 629 A.2d 1221 (Me.1993). In the instant case it is irrelevant that the construction trailer has since been vandalized and the utilities have been disconnected.

We find Helujon's argument regarding material changes in the development plan and the developer since approval of the rezoning order equally unpersuasive. This argument is unsupported by any citation to authority and raised for the first time on appeal. *Artman v. State Bd. Of Registration for the Healing Arts,* 918 S.W.2d 247, 252 (Mo. banc 1996). We review for error. We find no error on the part of the trial court in that Helujon did not raise this point before the trial judge.

The judgment of the trial court is affirmed and the case remanded to the trial court with directions to remand the matter to the Jefferson County Commission for inclusion of the agreed upon conditions in the rezoning order.

CRANDALL and KAROHL, JJ., concur.