**LAND CLEARANCE FOR REDEVELOPMENT AUTHORITY OF the CITY OF ST. LOUIS, Plaintiff/Respondent,**

v.

**Mabel M. INSERRA, Defendant/Appellant.**

**No. ED 91760.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 10, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 20, 2009.

Application for Transfer Denied June 30, 2009.

Francis X. Duda, St. Louis, MO, for appellant.

Thomas B. Weaver, St. Louis, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

The defendant landowner, Mabel Inserra, brings this interlocutory appeal of the order and judgment of the Circuit Court of the City of St. Louis. The trial court upheld the blighting determination made by the City of St. Louis Board of Aldermen (the Board) and condemned the landowner's property so that the plaintiff, the Land Clearance for Redevelopment Authority of the City of St. Louis (LCRA), may proceed with development. Because the Board's legislative determination of blight is supported by substantial evidence, we affirm the trial court's judgment.

Evidence adduced at trial showed that property in a designated area located south of downtown St. Louis suffers from a lack of maintenance and deterioration. The landowner's specific parcel appears to be unused and includes a warehouse with a dirt floor and no utilities; the dilapidated and deteriorating condition discourages comprehensive redevelopment on the block. Security to prevent crime was absent, and the property appeared unoccupied with no one to monitor conditions that could contribute to fire or other dangers.

In 2004, LCRA prepared its first blighting study and redevelopment plan for a designated 25-acre area bounded by Chouteau Avenue on the north, Broadway Street on the east, Interstate 55 on the south, and Seventh Street on the west (the Area). The first study enumerated the city blocks the Area encompassed and described the Area as being "in poor to fair condition." The study described property to be in "fair condition" if it was inadequately maintained, under-utilized, or vacant. "Poor condition" described property with structurally unsound or substantially deteriorated buildings or poorly maintained property without buildings used for open storage.[1] The first study found the Area blighted because its deteriorated condition posed an economic liability to the City and a hazard to its citizens' health and well-being.[2] Based on the first study, the Board adopted an ordinance finding

---

1. Section A(2) of the study described the conditions that exist throughout the Area.

 For the purpose of this Plan, "Fair Condition" means (1) property that is generally structurally sound but suffers from inadequate maintenance and upkeep, or (2) vacant unimproved property that is under-utilized. "Poor Condition" means (1) buildings that are structurally unsound and/or substantially deteriorated, requiring major improvements such as new roofs, windows, systems, etc., in order to be used productively, or (2) property without buildings which is poorly maintained, has crumbling pavement, and/or is used for open storage.

2. The study made the following finding of blight.

 The property within the Area is partly occupied and in poor to fair condition (as defined in Section A(2) above). The existence of deteriorated property constitutes both an economic liability to the City of St. Louis and presents a hazard to the health and well-being of its citizens. These conditions, therefore, qualify the Area as blighted within the meaning of Section 99.300 *et seq.* of the Revised Statutes of Missouri (the Land Clearance for Redevelopment Authority Law).

the Area blighted pursuant to section 99.320 RSMo. (2000),[3] approving and incorporating the first study, and approving a development plan for the Area, which included authorizing LCRA to acquire any property within the Area through the use of eminent domain.

In 2006, the Missouri General Assembly undertook eminent-domain reform. Dale A. Whitman, *Eminent Domain Reform in Missouri: A Legislative Memoir,* 71 Mo. L.Rev. 721, 721 (2006). Among the new statutes pertinent here are section 523.261 RSMo. (Supp.2008), which codifies the standard of review and authorizes expedited judicial review and interlocutory appeals, and section 523.274 RSMo. (Supp. 2008), which requires consideration of each parcel within a defined area and permits condemnation of any parcel therein if the area is predominately blighted. This latter section also limits the validity of legislative determinations of blight to five years unless the legislative body renews its determination. Section 523.274.2 RSMo. (Supp.2008).

Shortly after eminent-domain reform took effect, LCRA passed a resolution in 2006, affirming its previous finding of blight. LCRA also prepared a second study in conjunction with its resolution concluding that the landowner's property in particular was blighted. In 2007, LCRA began property-acquisition efforts, appraising the property and offering to purchase it from the landowner. Purchase negotiations proved unsuccessful, so LCRA filed a condemnation petition against the landowner early in 2008. At trial, LCRA called one witness and introduced, among other exhibits, its resolution with its attached second blighting study. The landowner did not object to admission of the resolution affirming blight and the second study, but objected to the study's

conclusion. LCRA's witness testified that the condition of the landowner's property had not changed since 2004, when LCRA prepared its first blighting study. The landowner called no witnesses. The trial court upheld the Board's blighting determination and ordered the landowner's property condemned for the purposes set forth in LCRA's petition.

Pursuant to section 523.261 RSMo. (Supp.2008), the landowner filed this interlocutory appeal of the court's order and judgment upholding the legislative determination of blight. In two points, the landowner claims the trial court erred in upholding the Board's determination because the blighting ordinance was not supported by substantial evidence and was arbitrary or capricious in that there was little or no evidence that the property constitutes an economic and social liability. There are three questions that we must decide: 1) whether the Board's legislative determination of blight remains valid after eminent-domain reform; 2) whether Missouri's eminent-domain reform affects our standard of review; and 3) whether substantial evidence supports the Board's determination.

*Does the Legislative Determination of Blight Remain Valid?*

 Missouri enacted eminent-domain reform in 2006, after the Board made its blighting determination but before LCRA filed its condemnation action against the landowner. We must first decide whether the Board's blighting determination remains valid under these circumstances. We conclude that the Board's prior legislative finding is not nullified by Missouri's new eminent-domain statutes.

---

**3.** All statutory references are to RSMo. (2000) except as otherwise indicated.

If, before final decision, a new law as to procedure is enacted and goes into effect, it must from that time govern and regulate the proceedings. But the steps already taken, the status of the case ... and all things done under the late law will stand unless an intention to the contrary is plainly manifested[.]

*State ex rel. Atmos Energy Corp. v. Public Service Commission of the State of Missouri*, 103 S.W.3d 753, 762 (Mo. banc 2003) (quoting *Clark v. Kansas City, St. L. & C.R. Co.*, 219 Mo. 524, 118 S.W. 40, 43 (1909)).

Section 523.274.2 RSMo. (Supp.2008) provides additional support for the proposition that the legislative determination made prior to Missouri's eminent-domain reform should not be invalidated. This section provides that a condemnation action to acquire property within a redevelopment area shall not commence more than five years after the legislative determination of blight, unless the legislative body renews its determination. Section 523.274.2 RSMo. (Supp.2008). Thus, the Missouri legislature determined that a legislative finding of blight should effectively expire after five years, but the legislature took no action affecting extant determinations of blight. Had the legislature intended to annul existing blighting determinations, it could have done so with express language in the new statute. But the legislature did not do so, instead limiting the validity of blighting determinations to five years unless renewed. No intention to annul existing determinations is plainly manifested. We conclude that the legislative determination of blight remains valid after eminent-domain reform.

*Does Eminent–Domain Reform Affect Our Standard of Review?*

■ We review the record to determine whether substantial evidence supports the Board's legislative determination of blight. *Centene Plaza Redev. Corp. v. Mint Props.*, 225 S.W.3d 431, 433 (Mo. banc 2007).[4] A legislative determination that an area is blighted "shall not be arbitrary or capricious or induced by fraud, collusion, or bad faith and shall be supported by substantial evidence." Section 523.261 RSMo. (Supp.2008). "The courts have generally treated the phrases 'not arbitrary and capricious' and 'supported by substantial evidence' as two ways of saying the same thing." Whitman, 71 Mo. L.Rev. at 738. This new statute makes no discernible change in the standard of review that Missouri courts have employed for over fifty years. *Id.*; *see also Centene*, 225 S.W.3d at 436 n. 2 (Stith, J., concurring) (noting that section 523.261 "is merely a codification of existing case law").

■ Missouri courts have long resolved disputes over the propriety of a city's legislative findings by applying the "fairly debatable" test. *Great Rivers Habitat Alliance v. City of St. Peters*, 246 S.W.3d 556, 562 (Mo.App. W.D.2008). We do not substitute our discretion for that of the legislative body, and we limit review of the reasonableness of a legislative determination to whether a sufficient showing of reasonableness exists so that the question is, at the least, a fairly debatable one. *Id.* (quoting *City of St. Joseph v. Hankinson*, 312 S.W.2d 4, 8 (Mo.1958)). To prevail on a claim that a legislative de-

4. Our usual standard of review for a court-tried case under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), does not apply where, as here, the trial court reviewed the propriety of a determination by a legislative body. *Centene*, 225 S.W.3d at 437 n. 3 (Stith, J., concurring). Rather, we examine the record to determine whether substantial evidence supports the legislative decision. *Id.* (quoting *Binger v. City of Independence*, 588 S.W.2d 481, 486 (Mo. banc 1979)).

termination is unreasonable, arbitrary, or capricious, a challenger must show that the reasonableness of the determination is not even fairly debatable. *Id.* Reasonableness or arbitrariness turns upon the facts of each case, and judicial review focuses on whether substantial evidence supports the legislative determination. *Id.* An absence of substantial evidence suggests that the legislative determination was unreasonable, arbitrary, or capricious while the existence of such evidence suggests that the determination was, at least, fairly debatable. *Id.* at 563; *see also Centene*, 225 S.W.3d at 436 n. 2 (Stith, J., concurring) (noting that a legislative determination not supported by substantial evidence is arbitrary). Even where evidence contrary to the legislative determination appears stronger than the evidence supporting it, so long as substantial evidence exists on both sides, then the question is fairly debatable, requiring us to defer to the legislative determination of blight. *Id.*

 Finally, in reviewing the legislative determination, we are not limited to the record presented to the legislative body. *State ex rel. Helujon, Ltd. v. Jefferson County*, 964 S.W.2d 531, 536 (Mo.App. E.D.1998). Rather, we are concerned with the end result, namely whether the legislative action is reasonable and fairly debatable. *Id.* at 540. The record we review may, and probably does, differ from the record before the legislative body. *Heidrich v. City of Lee's Summit*, 916 S.W.2d 242, 249 (Mo.App. W.D.1996). As our Supreme Court explained:

The pertinent inquiry is thus not what matters may have been literally or phys-

ically before the Council or present in the lawmakers' minds, but rather whether the Council's action when viewed in the light of the facts existent at the time of enactment of the Ordinance was reasonably doubtful or fairly debatable.

*Desloge v. County of St. Louis*, 431 S.W.2d 126, 132 (Mo.1968). We conclude that eminent-domain reform does not affect our standard of review.

### *Does Substantial Evidence Support the Board's Determination?*

 The Board determined the Area to be blighted pursuant to the Land Clearance for Redevelopment Authority Law, section 99.300 *et seq.* A "blighted area" is:

[A]n area which, by reason of the predominance of defective or inadequate street layout, insanitary or unsafe conditions, deterioration of site improvements, improper subdivision or obsolete platting, or the existence of conditions which endanger life or property by fire and other causes, or any combination of such factors, retards the provision of housing accommodations or constitutes an economic or social liability or a menace to the public health, safety, morals, or welfare in its present condition and use[.]

Section 99.320(3). The first half of the statutory definition refers to five factors that qualify an area as blighted where those factors, whether individually or in combination, produce one of the circumstances specified in the latter part of the definition. *Great Rivers*, 246 S.W.3d at 560.[5] If the five named factors—1) defec-

---

5. The *Great Rivers* case involved a blighting determination made pursuant to the Real Property Tax Increment Allocation Redevelopment Act (TIF Act) rather than the Land Clearance for Redevelopment Authority Law.

However, with the exception of one word, the TIF Act's definition of "blighted area" is identical to the definition contained in section 99.320(3), which is at issue here. The TIF Act uses the word "unsanitary" in section

tive or inadequate street layout, 2) insanitary or unsafe conditions, 3) deterioration of site improvements, 4) improper subdivision or obsolete platting, or 5) the existence of conditions which endanger life or property by fire and other causes—predominate by virtue of any one factor or a combination of factors and thus 1) retard the provision of housing accommodations, 2) constitute an economic or social liability, or 3) constitute a menace to the public health, safety, morals, or welfare, then an area may be declared "blighted." *Id.* at 560–61. Finally, the area must meet this definition when considered "in its present condition and use." *Id.* at 561.

We conclude that the Board's determination of blight is supported by substantial evidence. The landowner argues that, because the Board's determination found the Area to "constitute[ ] both an economic liability to the City of St. Louis and present[ ] a hazard to the health and well-being of its citizens," LCRA was obligated to establish both economic and social liability in order to establish that the Area is blighted. We need not decide this issue because substantial evidence supports a finding of both circumstances.

The first study found four types of properties within the Area: 1) structurally sound properties that suffer from inadequate maintenance and upkeep; 2) vacant, unimproved, and under-utilized properties; 3) properties with structurally unsound or substantially deteriorated buildings requiring major improvements; and 4) lots that are poorly maintained, have crumbling pavement, or are used for open storage but have no buildings. The study found the Area blighted as a result of the deteriorated properties that are inadequately maintained or vacant and under-utilized.

Such conditions, the study concluded, pose an economic liability to the City and present a hazard to its citizens' health and well-being.

Had LCRA presented only the first study, this would be a closer case. But the second blighting study came into evidence at trial without objection to its admission. Given admission of the second study and the testimony that conditions had not changed since the first blighting study, we are persuaded that substantial evidence existed to support findings of both economic and social liability. We attach no legal significance to LCRA's 2006 affirmation of blight because if occurred after the enactment of the blighting ordinance. But we do give weight to the LCRA's second blighting study because it recorded longstanding problems with the Area that existed at the time of ordinance's enactment.

Following the very broad findings of the first study for the Area as a whole, the second study found that much of the landowner's property, in particular, had weeds growing through the pavement and trash near the building, that the property was not contributing to the economic vitality of the neighborhood or City, that its current condition discouraged comprehensive redevelopment on the block, and that the property appeared dilapidated and in deteriorating condition. In the property's present condition and use, these factors predominate to constitute an economic liability. We hold that substantial evidence exists to support a finding of economic liability.

The second study found that there were many dark corners where criminal activity could occur and that there was no evidence of security on the property to pre-

99.805(1) RSMo. (Supp.2008) rather than the word "insanitary" used in section 99.320(3) of the Land Clearance for Redevelopment Authority Law. Thus, we find the *Great Rivers* opinion helpful in our analysis.

vent crime. Further, it observed that the property appeared unoccupied with no one to monitor conditions that could contribute to fire or other dangers. Finally, the study noted that the condition of the property would encourage loitering and other negative social behavior; the parking and loading areas were unprotected and unmonitored, which could attract juvenile delinquents. In the property's present condition and use, these factors predominate to constitute a social liability. We hold that substantial evidence exists to support a finding of social liability.

A legislative body properly makes a finding of blight where a predominance of factors named in the first half of section 99.320(3) results in one of the circumstances named in the second half of that section. *Great Rivers*, 246 S.W.3d at 565. From this record, we conclude that substantial evidence exists to support a finding that specified factors predominate, resulting in economic and social liability. Specifically, these factors are a combination of insanitary or unsafe conditions, deterioration of site improvements, and conditions that endanger life or property by fire and other causes. We affirm the trial court's judgment upholding the legislative determination of blight and ordering the landowner's property condemned for the purposes set forth in the plaintiff's petition. We remand the cause for further proceedings.

ROY L. RICHTER, P.J., and GEORGE W. DRAPER III, J., concur.