**JGJ PROPERTIES, LLC, and Megan Wolff, Appellants,**

v.

**CITY OF ELLISVILLE, Respondent.**

**No. ED 92896.**

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 23, 2010.

Steve Koslovsky, St. Louis, MO, for appellants.

Terese A. Drew, Johnny S. Wang, Hinshaw & Culbertson, LLP, St. Louis, MO, for respondent.

KURT S. ODENWALD, Presiding Judge.

*Introduction*

Property owners, JGJ Properties, L.L.C. (JGJ Properties) and Megan Wolff

(Wolff) (collectively, Appellants), appeal from the trial court's judgment in favor of the City of Ellisville (the City) on Appellants' petition for declaratory judgment seeking to require the City to rezone their properties from residential to commercial. Finding no error, we affirm.

## Background

JGJ Properties and Wolff, both own property in the City. James (Jamey) Duncan, his father James (Jim) Duncan, and his mother Gay Duncan, as owners of JGJ Properties, purchased the property located at 63 Old State Road, at the corner of Old State Road and Macklin Drive, for relocation of their family-owned lawn irrigation installation business, Duncan & Perry Underground Sprinklers (Duncan & Perry).[1] JGJ Properties was formed by the Duncan family for the purpose of purchasing the Old State Road property, turning the property into commercial property, and then leasing the property to Duncan & Perry. At the time JGJ Properties purchased the Old State Road property, the parcel was zoned R–1 "Single Family Residential" under the City's Zoning Ordinance, though the City's Comprehensive Plan [2] suggested classification of the property as "Limited Commercial." JGJ Properties was aware of the residential zoning designation when it purchased the parcel. The contract to purchase the property was not contingent upon the property being rezoned as commercial.

During JGJ Properties' planning process to redevelop the Old State Road parcel into commercial property, Jamey Duncan (Duncan) determined that additional land would be necessary to adequately accommodate the parking needs of Duncan & Perry. Duncan then approached Wolff, the adjoining property owner to the east,[3] about petitioning the City to zone both properties as commercial and creating a combined parking lot for the new businesses. In anticipation of the property being rezoned as commercial, JGJ Properties made improvements to the building to comply with ADA requirements.

On January 4, 2007, Appellants submitted applications to the City requesting that the City rezone the two parcels from R–1 residential to C–1 commercial district. Appellants also submitted applications to the City's Board of Adjustment for variances for the purpose of securing the rezoning requests.

After reviewing the rezoning requests, Ada Hood (Hood), the City Planner, recommended that the City's Planning and Zoning Commission approve the proposed rezoning requests and associated site plans, subject to a number of conditions. The City's Planning and Zoning Commission conducted a public hearing on February 28, 2007. At that time, Appellants' petitions were approved and the Commission recommended approval of the petitions to the City Council, subject to a number of conditions.

1. Prior to purchasing the Old State Road property, Duncan & Perry was located in Wildwood, Missouri but sought to relocate to Ellisville.

2. The City's Comprehensive Plan was prepared by the City's Department of Planning and Community Development in January 2006. The City's expert testified at trial that, "The comprehensive plan is a guidance document. It's intended to be a document that

sets guidelines, sets policy direction, for land use in the future growth and development in the community." He further testified the City Council does not have to follow the Comprehensive Plan, but may use it as a guide in making decisions.

3. Wolff's property is located at 1481 Macklin Drive, directly east of the JGJ Properties' parcel.

On February 28, 2007, the City's Board of Adjustment also held a public hearing on Appellants' requests for variances. The Board of Adjustment approved Appellants' requests, but noted "[t]his decision is contingent on the rezoning of the property to C–1 Open Space Commercial."

After Protest Petitions were filed by neighboring residents relative to the proposed rezoning,[4] Hood recommended that the City Council hold a public hearing to solicit public input. The rezoning was discussed during the City Council meeting on April 4, 2007, after which Mayor Pirrello polled "residents and property owners as to approving the rezoning." None were in favor and six were opposed.

After that meeting, Duncan requested a meeting with the City Council and was permitted to address them at an April 18, 2007 meeting. On May 18, 2007, an ordinance was introduced before the City Council to change the zoning on Appellants' properties from R–1 to C–1. The City Council unanimously denied the bill.

Appellants then filed their Petition with the circuit court in St. Louis county. In Count I of their Petition, Appellants sought a declaratory judgment to declare that the zoning of the properties was unreasonable and invalid. Appellants sought an order requiring the City to rezone the properties to a "reasonable classification under the City Zoning Ordinance." In their second Count, Appellants sought damages against the City.

A trial was held on February 6, 2009, on Appellants' declaratory judgment action (Count I), while the damages claim (Count II) was deferred. Duncan, Wolff, and expert Richard Ward testified on behalf of Appellants. City Clerk Catherine Demeter, Mayor Matt Pirrello, and expert John Brancaglione testified for the City.

Duncan testified at trial that after the City Council denied the rezoning requests, JGJ Properties has rented its parcel as a residential home "the majority of the time" for $1000 per month, though there was time when there was no rent being paid on the home. In addition to the rent collected on the property, JGJ Properties also received $2000 per month from Duncan & Perry. Duncan testified that, in his opinion, the property would be worth more zoned as commercial rather than residential. However, Duncan agreed that, both at the time JGJ Properties purchased the property and at the time of trial, the property was suitable for residential use. Duncan was unaware of the property's commercial value.

Wolff also testified at trial on Appellants' behalf. She testified that she purchased her property in December 2005, and from that time until June 2006, she rented the property to residential tenants who paid $1800 per month in rent. In June 2006, Wolff moved to the property with two roommates, and at some point only she and her boyfriend continued to live at the residence. As of the time of trial, Wolff continued to use the property as her personal residence and agreed that the property is reasonably suited for residential zoning. Although Wolff testified that she believed her property would have a higher value had it been rezoned as requested, she did not obtain an appraisal of the property based upon a commercial zoning. Wolff did not offer a firm figure as to what the property was worth, either as residential or commercial property.

---

4. Over forty-one percent of the eligible property owners within 185–feet of the property in question filed protest petitions with regard to the JGJ Properties property and over fifty-three percent of the eligible property owners filed protest petitions with regard to Wolff's property. Fifteen additional property owners, outside the 185–foot radius, also filed protest petitions with regard to the proposed rezoning.

Richard Ward (Ward), a private consultant in urban planning and real estate development, also testified for Appellants. Ward testified that in his opinion it was "clearly arbitrary and capricious" for the City to deny Appellants' applications for rezoning which fit into the classification for light commercial. Ward based this opinion on the City's Comprehensive Plan and his examination of the surrounding properties along Old State Road and Macklin Drive. Ward, did however, admit that both of the properties are suitable for residential use. Ward also testified that while "commonsense tells [him] that a commercial use would have more value," he did not calculate a valuation of the properties based upon the differing zoning categories.

The City presented evidence from John Brancaglione (Brancaglione), a manager of urban consulting operations at an architecture and private urban consulting firm. Brancaglione testified that the properties are suitable for residential use, and that in his opinion, the City Council correctly decided against rezoning the properties from residential to commercial.

The City also called Mayor Matt Pirrello (Mayor Pirrello) as a witness at trial. Mayor Pirrello testified that he voted against the rezoning of the properties because he did not think the City's Comprehensive Plan contemplated "piecemealing various sections together at the detriment of the surrounding community."

The trial court entered its Order and Judgment on March 26, 2009, finding that "the actions of the Council of the City of Ellisville in refusing to rezone [Appellants'] properties was not unreasonable and arbitrary." The trial court entered judgment on behalf of the City and assessed costs to Appellants.

Appellants filed a notice of appeal to this Court on April 15, 2009. This appeal follows.

### Points on Appeal

Appellants present two points on appeal. First, Appellants argue the trial court's judgment was against the weight of the evidence. Appellants claim the evidence established that continued single family residential zoning of the properties was arbitrary and unreasonable in light of the City's own Comprehensive Plan which recommended "limited commercial" uses for Appellants' properties, and the extensive commercial and light industrial uses along both sides of Old State Road.

In their second point on appeal, Appellants assert the trial court misapplied the law in holding that the City was not estopped to deny the requested rezoning by Hood's written and oral representations and the issuance of commercial building permits upon which Appellants relied when purchasing the properties and making substantial improvements thereto.

### Standard of Review

■ Because zoning, rezoning, and refusal to rezone are legislative acts, we review any challenges to their validity *de novo*, with deference to the trial court's ability to assess the credibility of witnesses. *Lenette Realty & Inv. Co. v. City of Chesterfield*, 35 S.W.3d 399, 405 (Mo. App. E.D.2000); *Elam v. City of St. Ann*, 784 S.W.2d 330, 335 (Mo.App. E.D.1990). Zoning ordinances are presumed to be valid; however, this presumption is rebuttable and the challenger bears the burden of proving an ordinance's unreasonableness as applied to his property. *Elam*, 784 S.W.2d at 335. "Any uncertainty about the reasonableness of a zoning regulation must be resolved in the government's favor: if the issue is at least fairly debatable, the reviewing court may not substitute its opinion for that of the zoning authority which enacted the challenged ordinance." *Id.* We review the evidence in the light

most favorable to the City Council's decision. *Lenette,* 35 S.W.3d at 401.

*Discussion*

I. *City's decision to continue residential zoning was not arbitrary and unreasonable.*

In their first point, Appellants argue that the decision of the City Council to retain the existing residential zoning on their properties was arbitrary and unreasonable. Appellants assert that the overwhelming evidence at trial established that the continuation of residential zoning on their properties was in direct contravention of (1) the City's own Comprehensive Plan, and (2) the established pattern of commercial and light industrial development already in place along Old State Road. We disagree. The City's continuation of the residential zoning is not unreasonable in light of the evidence presented at trial. First, the alleged private detriment to Appellants by continuing the present residential zoning does not outweigh the public interest in retaining the present zoning classification. Moreover, we find that the record does not support a finding of private detriment to Appellants by continuing the residential zoning for each of the parcels.

■ The analytical framework for reviewing zoning decisions is well settled under Missouri law:

First, the court reviews the property owner's evidence to determine whether the owner has rebutted the presumption that continuation of the present zoning was reasonable; and second, the court reviews the government's evidence to determine whether such evidence makes

the continuation of the present zoning fairly debatable.[5]

*Elam,* 784 S.W.2d at 335.

■ Accordingly, we first review the evidence presented at trial to determine if Appellants have rebutted the presumption that continuation of the residential zoning for their properties was reasonable. *See id.; Wells & Highway 21 Corp. v. Yates,* 897 S.W.2d 56, 61 (Mo.App. E.D.1995). This initial determination of whether Appellants have set forth sufficient evidence to rebut the presumption of validity is made by "balancing the private detriment to the challenging party against the public interest in retaining the existing zoning." *Lenette,* 35 S.W.3d at 406. Appellants must demonstrate that the "private costs of failure to rezone outweigh the benefit the general public enjoys by retaining the existing zoning designation." *Id.* "Any uncertainty regarding the reasonableness of a zoning ordinance is resolved in the municipality's favor." *JR. Green Prop., Inc. v. City of Bridgeton,* 825 S.W.2d 684, 686 (Mo.App. E.D.1992).

A. *Private Detriment*

■ In order to rebut the presumption of validity in the City Council's zoning determination, Appellants must demonstrate that "the private detriment outweighs the public benefit." *Wells,* 897 S.W.2d at 61. "Factors which show private detriment include the adaptability of the subject property to its zoned use and the effect of zoning on property value." *Elam,* 784 S.W.2d at 335; *see also Lenette,* 35 S.W.3d at 406.

Appellants first argue that their properties are not adaptable for continued residential use. In support of this claim, Appellants emphasize Duncan's testimony

**5.** The so-called "debatable" rule means that, "if there is substantial evidence both ways [i.e., substantial evidence of both reasonableness and unreasonableness], then the legislative conclusion is determinative." *Elam,* 784 S.W.2d at 335 n. 4.

that since the denial of the rezoning by the City, JGJ Properties has had very little success in renting its property. In contrast, Appellants argue the properties are highly adaptable for commercial use. We caution that the adaptability of the subject properties to the requested zoning is not the issue before us. Instead, we are to examine the "adaptability of the subject property to its zoned use." *Elam*, 784 S.W.2d at 335.

The record before us supports a finding that the parcels of land at issue are adaptable to a residential use. In fact, both Duncan and Wolff testified to this fact. Duncan agreed that JGJ Properties' parcel, "as it stands on 63 Old State, is suitable for residential use," and that at the time of the trial there was a tenant renting the residence. While Duncan testified that JGJ Properties was not able to "fully rent" the property and was only receiving half the rent from a residential tenant that it would earn from a commercial tenant, this testimony was misleading and self-serving. Duncan was not offered as an expert witness on the rental value of property. Moreover, his testimony of the "value" of the property to a commercial tenant was predicated solely on the amount that Duncan & Perry, his own company, was willing to pay to lease the premises.

Similarly, Wolff testified that she continues to use her property as her personal residence. Wolff testified that there was nothing about the parcel that prevents it from being used as residential property, that the property was reasonably suitable for use under residential zoning, and that her property continued to have value as a residentially zoned property.

Appellants next argue that their properties are worth considerably less under the current residential zoning classification than if the parcels were rezoned to a commercial classification. While the effect of zoning on property value is a factor for us to consider in determining private detriment, "the use that affords the property owner the highest economic value[ ] should not be the controlling factor in the court's determination of private detriment." *Lenette*, 35 S.W.3d at 406; *see also J.R. Green*, 825 S.W.2d at 686 ("Increased value of the land from rezoning is relevant but not decisive. It if were the determinative factor then residential areas would be difficult to maintain for commercial land has a higher market value than residential.") As this Court noted in *Lenette*:

> The very nature of zoning ordinances is to restrict the use of land. If courts employed a 'highest and best' [6] use standard, any landowner whose property was in any way diminished in value owing to a zoning restriction could overturn the zoning ordinance. This would clearly circumvent the beneficent principles at work in a comprehensive zoning scheme. Courts, therefore, consider a property's reasonable use in measuring an owner's private detriment.

35 S.W.3d at 406. (emphasis in original).

While private detriment does not necessarily occur "just because land will bring a higher price if used commercially rather than residentially, there can arguably be no private detriment in the absence of a demonstrated negative impact on property value." *Elam*, 784 S.W.2d at 336 (internal citations omitted). In fact, "[a]s long as zoning has not adversely affected property value, owners dissatisfied with the zoning may simply recoup their investment on the open market." *Id.*

Although Appellants allege the undisputed evidence indicates the subject proper-

---

**6.** The Court defines "highest and best" use as "the use that affords the property owner the highest economic value." *Lenette*, 35 S.W.3d at 406.

ties are worth considerably less under the current residential zoning classification than if they were rezoned as commercial property, Appellants presented no substantive evidence to the trial court to support this conclusion. The only evidence of the alleged diminution in value presented at trial was Duncan and Wolff's own self-serving testimony that their properties are worth less zoned residential than they would be under commercial zoning. Appellants failed to provide evidence of any appraisals or other substantive evidence of the relative value of their properties when zoned as residential versus commercial. The record contains no evidence of the properties' residential or commercial value, much less any evidence that the current zoning has adversely affected the properties' residential value, either absolutely or relative to their commercial worth. We find no evidence in the record, aside from Duncan and Wolff's own conclusions, that the properties in question would definitely be worth more zoned as commercial property rather than residential.[7]

Given the evidence adduced at trial, we cannot find Appellants suffered any private detriment from the City Council's denial of their petition to change the zoning on their properties from residential to commercial. Appellants purchased their respective properties knowing that the parcels were zoned residential. Appellants' purchase price was based upon a residential zoning classification. Appellants currently both use their properties as residential properties. Furthermore, Appellants failed to introduce tangible evidence of any diminution in value of their properties based on the continued residential zoning. Because we find Appellants failed to prove any private detriment what-soever, we need not balance the private detriment against the public interest. Furthermore, because Appellants have not cleared the first hurdle in the analysis of zoning decisions by rebutting the presumption that continuation of the present zoning was reasonable, we need not address the second hurdle in examining whether the City's continuation of the present zoning is "fairly debatable."

Appellants' first point is denied.

## II. The trial court correctly applied the law in denying Appellants' claim of estoppel.

In their second point on appeal, Appellants allege the trial court misapplied the law in holding that the City was not estopped to deny the requested rezoning. Appellants argue the City is estopped because of written and oral representations made by the City Planner, and the issuance of commercial building permits by the City. Appellants claim to have reasonably relied upon such representations and the issuance of the permits when purchasing the parcels and making substantial improvements thereto. We disagree.

As the Western District noted in *Fraternal Order of Police Lodge # 2 v. City of St. Joseph,* 8 S.W.3d 257, 263 (Mo. App. W.D.1999):

Equitable estoppel is normally not applicable against a governmental entity. The application of equitable estoppel against governmental entities or public officers is limited to exceptional circumstances where right of justice or the prevention of manifest injustice requires its application. This doctrine is not favored by law and is not to be casually

---

7. Appellants appear to rely upon a general notion that property values are greater for commercial use than residential use. While we recognize the existence of such argument, such anecdotal evidence, in this case, is insufficient to demonstrate the negative impact on the value of the properties that is required for us to find a private detriment.

invoked. Equitable estoppel is not applicable if it will interfere with the proper discharge of governmental duties, curtail the exercise of the state's police power or thwart public policy. The underlying principle behind its limited application to governmental entities and public officials is that public rights should yield only if private parties possess greater equitable rights, (internal citations omitted)

 Equitable estoppel has three elements: "(1) an admission, statement or act inconsistent with the claim afterwards asserted and sued upon; (2) action by another party on the faith of such admission, statement, or act; and (3) injury to such other party, resulting from allowing contradiction of the admission, statement, or act." *Id.* (citations omitted) When an estoppel claim is made against the government, in addition to these three elements, the party must also show that the governmental conduct on which the claim is based constitutes affirmative misconduct. *Id.* The elements of estoppel must be proved by clear and satisfactory evidence. *Id.*

Appellants concede that "it is generally true that estoppel will not lie against a city based upon the statements and actions of its agents." However, Appellants argue that in cases where a property owner has acted in reasonable reliance on a city's representations in purchasing property for a proposed use, courts have required a city to issue the appropriate zoning approvals. JGJ Properties argues that it consulted with Hood, the City Planner, who assured Duncan that the proposed uses for the properties were appropriate under the City's Comprehensive Plan. Appellants further argue that the City issued building and plumbing permits to allow JGJ Properties to make improvements that were required to comply with the commercial building codes, and that Appellants received unanimous approval from the Planning and Zoning Commission and the Board of Adjustment for their plans before the City Council reversed course and denied Appellants' applications.

Although Appellants allege the City should be estopped to deny their requested rezoning, Appellants have failed to demonstrate the essential elements of estoppel. Appellants have not provided any evidence to satisfy any of the elements of estoppel. In fact, Appellants fail to address the elements of estoppel in their brief. Furthermore, Appellants presented no evidence of misconduct by the City or the City Council. The evidence before us shows that JGJ Properties was aware that City Council approval was a prerequisite to any commercial rezoning of the property. In fact, the "representations" Appellants allege to justify the use of estoppel evidence an unambiguous communication to Appellants from the City that City Council approval was a prerequisite to any commercial rezoning of the parcels.

Hood's September 28, 2006 letter to Gay Duncan specifically notes, "The subject property is currently zoned R–1 Single Family Residential. You will be required to rezone the property to an appropriate zoning district." In closing, Hood states, "Again, you will be required to rezone the property to an appropriate zoning district and comply with all applicable regulations." While Appellants also rely on the building permits granted by the City, these permits similarly contain the unequivocal admonition that the, "[p]ermit does not constitute approval for change in use of building."

Given the lack of evidence presented by Appellants to meet the essential elements required to demonstrate a case for estoppel, the City Council was not estopped from denying Appellants' rezoning requests.

Instead of arguing the elements of estoppel, Appellants argue that the holding in *State ex rel. Casey's Gen. Stores, Inc. v. City of Louisiana*, 734 S.W.2d 890 (Mo. App. E.D.1987), estops the City from denying Appellants' rezoning petition and requests for site plan approval. Appellants' reliance on *Casey's* is grossly misplaced, as the facts in *Casey's* are substantially distinguishable from the facts before us. In *Casey's*, the property owner purchased a parcel of land where it intended to build a new convenience store. Prior to purchasing the property, the property owner was assured by city officials that nothing would prevent the operation of the convenience store on the property to be acquired. *Casey's*, 734 S.W.2d at 893, 896. After the property was purchased, and while the property owner was in the process of obtaining the necessary permits to operate the convenience store, the City of Louisiana declared the parcel to be part of a residential area. *Id.* at 893. Given the factual and legal situation of that case, this Court found the trial court erred in failing to hold the city equitably estopped from denying issuance of the building permit. *Id.* at 896.

The facts in *Casey's* are significantly distinguishable from the case before us. Here, Appellants purchased their properties with the express knowledge that the parcels were zoned residential. Unlike the City of Louisiana in *Casey's*, the City here took no affirmative steps to change the zoning in a manner that would prohibit Appellants from using their properties in accordance with the zoning in place at the time the parcels were purchased. The holding in *Casey's* is not persuasive in our analysis.

Appellants have failed to demonstrate the required elements for equitable estoppel. The trial court did not err in finding the City was not estopped to deny the requested rezoning by Appellants. Appellants' second point is denied.

*Conclusion*

The judgment of the trial court is affirmed.

GEORGE W. DRAPER, III and GARY M. GAERTNER, JR., JJ., concur.