

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE ex rel. DARIN GILLEY and KAREN DEAN, | ) ) ) | No. ED108527 |
| Appellants, | ) ) | |
| vs. | ) ) | Appeal from the Circuit Court of Franklin County |
| COUNTY COMMISSION OF FRANKLIN COUNTY, | ) ) ) | 19AB-CC00077 |
| Respondent, | ) ) | Honorable Michael S. Wright |
| and | ) ) | |
| LANDVATTER ENTERPRISES, LLC, | ) ) | |
| Intervenor/Respondent. | ) | Filed: September 15, 2020 |

## OPINION

Darin Gilley and Karen Dean (collectively "Appellants") appeal the judgment of the Circuit Court of Franklin County affirming the decision of the County Commission of Franklin County ("the Commission") granting the rezoning of 12.68 acres of land owned by Landvatter Enterprises, LLC ("Landvatter") from a Community Development Zoning District ("CD") to a Commercial Activity 3 – Community Business – Zoning District ("CA3"). We affirm the Commission's decision.

# I.    BACKGROUND

Landvatter is the owner of approximately twenty-five acres of land located on Old Route 66/West Osage Street near the intersection of Old Gray Summit Road in Franklin County, Missouri.  On July 13, 2018, Landvatter applied to the Franklin County Planning and Zoning Department to rezone 12.68 acres of its property ("Property").  The Property at the time was zoned as CD, and Landvatter sought to rezone it to CA3 for the purpose of operating a concrete batch plant to manufacture and sell concrete products.  Additionally, the remaining 11.93 acres of Landvatter's land, which would give at least 650 feet between the plant and the residential properties along Old Gray Summit Road, would remain wooded and vacant to act as a natural buffer ("the Buffer") between the residential properties to the south and southwest of the Property.

The properties between Old Route 66 and Old Gray Summit Road are zoned CD and across the road is zoned Commercial Activity Highway Service.  Properties to the west of and right across the street from Landvatter's Property include a Missouri Department of Transportation ("MoDOT") storage facility, a fireworks sales shop, a heavy vehicle repair business, a gas station, and an Ameren Substation.  The east of the proposed rezoning is bordered by actively used railroad tracks.  To the south and southwest of the Property are residential properties where Appellants live.  Lastly, immediately to the north of the Property is Interstate 44.  The ingress and egress of the Property is located on the outer road of Interstate 44.

The Franklin County Planning and Zoning Commission ("the Planning Commission") held a public hearing on November 20, 2018, where testimony was given from proponents and those opposed to the rezoning of Landvatter's Property.  The Planning Commission postponed voting on the rezoning application until further review from the Planning Commission's Review

2

Committee. That committee then recommended approval of the rezoning from CD to CA3 by three votes to none. On December 18, 2018, the Planning Commission met again and voted seven to one to recommend the Commission order the rezoning of Landvatter's Property.

On January 31, 2019, the Commission held a public hearing regarding Landvatter's rezoning application. The Commission heard evidence from proponents and those opposed to the rezoning application. On March 12, 2019, the Commission unanimously voted to grant Landvatter's rezoning application and change the Property from CD to CA3 because it determined the requested rezoning would not be detrimental to the area in question and rezoning would be beneficial to Franklin County as a whole.

There was a plethora of testimony adduced at the various hearings. The rezoning application was created in such a way that approximately twelve acres of trees on Landvatter's land buffers the residential houses near the zoned Property. Landvatter sought to rezone the Property to CA3 because it allows for heavy manufacturing which includes concrete batch plants.

Landvatter also had a concrete batch plant in Kirkwood, Missouri that did not have a buffer. Located by the Kirkwood plant, there is a subdivision of homes ranging in value from two hundred thousand to seven hundred thousand dollars. Two homes listed for sale that were adjacent to the Kirkwood plant were listed for approximately four hundred and fifty thousand dollars. Additionally, a neighbor of the Kirkwood plant wrote an email stating how well Landvatter operated the plant which has created little impact on the neighborhood.

Further, Landvatter's attorney testified the rezoning application comports with the Franklin County Master Plan ("Master Plan") because the Property would be used for

commercial and manufacturing which is what Franklin County decided would be best along Interstate 44.

To ease the concerns about polluting the Shaw Nature Reserves nearby, Landvatter's plans included having two water retention basins which would prevent any polluted water from leaving the site. Additionally, there was evidence adduced showing compliance with the Missouri Department of Natural Resources ("DNR") at the other Landvatter concrete batch plants.

Richard Ward ("Ward") testified in favor of granting Landvatter's rezoning application. Ward is an urban planner, has a certification in economic development, has a graduate degree in urban and regional planning, and has been a consulting planner for over forty-five years in the St. Louis Metropolitan area. He testified the Property will be divided in use between the actual plant operation and the Buffer. The Buffer will be about 650 feet between the actual plant and the residential properties along Old Gray Summit Road. Ward stated the Buffer has no other practical uses because it is steep, wooded, has two utility lines that pass through it, and the land does not have effective access. Additionally, there is a pipeline used for petroleum or gas located on the Buffer. Because of the condition of the land that the Buffer encompasses, Ward believed the Buffer would be there for a significant amount of time. Ward further testified the tree cover of the Buffer would act against both sight and sound from the Landvatter plant to the north.

Additionally, Ward testified about the Kirkwood concrete batch plant and how homes within fifty feet of the site were close to five hundred thousand dollars and homes within three hundred feet were priced at seven hundred thousand dollars. Further, Ward testified how the Master Plan supports the decision to rezone Landvatter's Property because it would promote

4

growth through industry and commercial uses in that concrete is something that is fundamental and necessary for growth. Lastly, Ward emphasized he saw no conflict between the surrounding area and the rezoning of Landvatter's Property, and that Franklin County's economy and prosperity would be positively impacted by allowing the rezoning.

Roger Landvatter testified that a sewer line is a divider between the Property where the concrete batch plant would be built and the Buffer. On the Buffer side of the sewer line is a creek in which a bridge would need to be built. He stated there was no desire to spend that kind of money to develop the Buffer, which was steep. Additionally, testimony showed the Buffer would remain zoned CD, so if the Property were ever sold the buyers would still have to follow the current zoning regulations. Roger Landvatter also testified he would be willing to talk with Franklin County to buy the Buffer to be used as a park.

Tom Kelp ("Kelp"), who owns a contracting business, testified Landvatter's concrete is his preferred provider. Kelp stated concrete is a perishable product that can be affected by long truck drives. He stated having a concrete batch plant in the proposed location of the rezoning would be an ideal location because there are no other concrete plants in or near Gray Summit. Lastly, he testified how some places will pay more for Landvatter's concrete.

Those in opposition to the rezoning of the Property mostly had similar arguments. The residents living around Landvatter's Property asserted if the Property was rezoned it would allow any kind of industry to be built on the land. A big concern for the residents was how they believed their property values would be negatively impacted if the Property would be rezoned. Residents testified they like the area because it is quiet, has little traffic, and lots of wildlife. Additionally, some residents stated they were concerned with the location of the Property and how trucks would be entering and leaving the area leading to potentially dangerous streets.

5

There was also testimony regarding Landvatter's other concrete batch plants which had a history of DNR violations and noise violations. This led to a major concern of the concrete batch plant potentially damaging the Shaw Nature Reserve nearby through pollution and ground water waste. People at the hearing stated they believed allowing the rezoning would detrimentally affect the esthetics. The Director of the Shaw Nature Reserve stated he was concerned the potential noise and dust from the proposed rezoning would be a detriment to the visitor experiences at the reserve. Further, a concern of the residents revolved around the Buffer between the homes and the proposed rezoning. The residents feared there was nothing preventing Landvatter from bulldozing or leasing out the Property to another party which would then demolish the Buffer.

After the Commission entered an order approving Landvatter's application for rezoning, Appellants filed a petition for writ of certiorari with the Circuit Court of Franklin County. On a motion for judgment on the record, the Circuit Court affirmed the Commission's decision. Appellants now appeal the Commission's decision to rezone the 12.68 acres of Landvatter's Property from CD to CA3.

## II.    DISCUSSION

Appellants raise six points on appeal which all allege the Commission's decision to rezone is illegal. In Appellants' first point on appeal, they argue the rezoning constitutes impermissible spot zoning. In Appellants' second through fourth points on appeal, they argue Article 7, Section 138 of the Franklin County Planning and Zoning Unified Land-Use Regulations ("Article 7, Section 138") is unconstitutional on various grounds. In Appellants' fifth point on appeal, they argue the Commission abdicated its authority to a private corporation. And in Appellants' sixth and final point on appeal, they contend the rezoning bears no

6

substantial relationship to the health, safety, morals, or general welfare, and the Commission's decision is an abuse of discretion, is not supported by competent and substantial evidence, and was arbitrary and capricious.

## A. General Standard of Review

"Because a rezoning is a legislative act, we review de novo a challenge to its validity." *State ex rel. Mason v. County Commission of Franklin County*, 551 S.W.3d 54, 57 (Mo. App. E.D. 2018) (emphasis omitted). We may reverse a legislative action "only if arbitrary and unreasonable, meaning that the decision is not 'fairly debatable.'" *State ex rel. Helujon, Ltd. v. Jefferson County*, 964 S.W.2d 531, 536 (Mo. App. E.D. 1998) (citation omitted). A decision is considered arbitrary and unreasonable if it bears no substantial relationship to the public health, safety, morals, or general welfare. *Id*. The evidence is viewed in the light most favorable to the government's decision. *JGJ Properties, LLC v. City of Ellisville*, 303 S.W.3d 642, 647-48 (Mo. App. E.D. 2010).

## B. Appellants' Spot Zoning Claim

In Appellants' first point on appeal, they argue the rezoning of Landvatter's Property from CD to CA3 constitutes impermissible spot zoning because the rezoning operates as a wealth transfer for one entity, does not promote the public good, and does not follow the goals of the Master Plan. We disagree.

"Spot zoning" is a descriptive word used for "[w]hen a zoning [decision] or an amendment puts a small area in a zone different from that of the surrounding area." *Treme v. St. Louis County*, 609 S.W.2d 706, 713 (Mo. App. E.D. 1980) (citation omitted). The main question to ask is whether the rezoning was done for reasons other than the general welfare. *Id*. If the rezoning is in "harmony with the comprehensive zoning plan and is done for the public good-that

7

is, to serve one or more of the purposes of the enabling statute, and so bears a substantial relationship to the public health, safety, morals and general welfare, it is valid." *Id*. (citation omitted).

One of the purposes of the enabling statute is to secure the most economical use of land in accordance with a comprehensive plan. Section 64.850 RSMo 2016. Franklin County has developed a Master Plan to prepare for the future. One mission of Franklin County's Master Plan is to provide orderly growth and development of the County through special attention to land use and economic development. The Master Plan sets forth the goal of creating a diverse economy with a focus on sectors that create jobs and boost the economy, including manufacturing, transportation, and logistics. Within that goal, the County wants to work to create more job opportunities by targeting growing sectors and supporting new and existing businesses such as manufacturing, which makes up approximately twenty-two percent of the workforce in Franklin County. One way to accomplish this objective is by encouraging a variety of land uses throughout the County and encouraging the growth of new commercial and industrial uses through zoning. Modifications of zoning are allowed under the Franklin County Planning and Zoning Unified Land-Use Regulations due to the ever-changing conditions that exist in the County.

Another goal of the Master Plan is to ensure contiguous land uses are compatible. One of the ways to carry out such a goal is to ensure new developments minimize conflict with existing residential activities. The Master Plan also specifically discusses new industrial or commercial developments creating a buffer between differing uses.

We are not convinced, under these circumstances, the Commission's decision to rezone Landvatter's Property was out of alignment with the Master Plan. The concrete batch plant

8

promotes the expansion of the manufacturing field within Franklin County. Additionally, the Commission followed the guidance of the Master Plan to ensure there was a buffer zone between the residential community and the concrete batch plant.

Appellants contend the private detriment of the surrounding landowners will be immense because: (1) property values will decrease, and (2) the dust, noise, and pollution will irreparably harm the quality of life for the people in the surrounding properties. However, there was testimony presented at the hearings in conflict with Appellants' contentions. First, there was various testimony discussing Landvatter's Kirkwood concrete batch plant and the homes directly by the operation. There was evidence the homes directly near the Kirkwood plant were within the two hundred thousand and seven hundred-thousand-dollar range. Second, there was testimony submitted regarding Landvatter installing two water basins to prevent polluting the ground water, and how there will continue to be a Buffer which will help with the dust and noise. Additionally, the operations would be regulated by the DNR which would be subject to quarterly inspections.

Appellants also argue there is no public benefit gained from rezoning the land to CA3 to build a concrete batch plant. However, looking at the record before us, it is at least fairly debatable. There was testimony presented about the need for a concrete batch plant in the area because concrete is a perishable product. This would ultimately allow the area to have the ability to continue growing in the manufacturing sector due to the accessibility of the concrete.

We are not convinced the rezoning of the Property was done for reasons other than the general welfare under these circumstances. Therefore, the Commission's decision to rezone the

9

Property CA3 does not constitute improper spot zoning.[1]  *See Treme*, 609 S.W.2d at 713.  Point one on appeal is denied.

## C.    Appellants' Constitutional Claims

In Appellants' second through fourth points on appeal, they contend the rezoning is illegal because Article 7, Section 138 is unconstitutional as it violates the Equal Protection Clauses and Due Process Clauses of the U.S. and Missouri Constitution.

### 1.    Whether Article 7, Section 138 Violates the Equal Protection Clauses

In Appellants' second point on appeal, they allege the rezoning violates the Equal Protection Clauses of the U.S. and Missouri Constitution because Article 7, Section 138 is not rationally related to a legitimate state interest.  Further, Appellants argue having a concrete batch plant in a commercial district results in such a land use not being subject to the same buffer requirements as though it had been classified in an industrial district, thereby causing residents living near the Property being treated differently than other people residing near properly classified industrial operations.  More succinctly, Appellants contend the Commission's decision violates the Equal Protection Clauses by arbitrarily deciding which manufacturing companies can be classified under Article 7, Section 138 and which ones cannot.  We disagree.

Since there is no suspect classification or fundamental right at issue in this case, we apply rational-basis review to determine if the challenged land-use regulation is rationally related to some legitimate end.  *See Labrayere v. Bohr Farms, LLC*, 458 S.W.3d 319, 331 (Mo. banc 2015).  We presume the land-use regulation has a rational basis, and an appellant must overcome this presumption by a "clear showing of arbitrariness and irrationality."  *See Id*. at 332 (citation

---

[1] We dispose of Appellants' contentions that the rezoning operates as an improper wealth transfer for Landvatter. Because Appellants have failed to cite any controlling legal authority to support their argument, and we can find no such legal authority, it has no merit.

omitted). Additionally, "[t]he issue is not whether the reviewing court perceives the challenged law as wise or desirable. The issue is whether the challenger has demonstrated that the law is completely irrational." *Id*.

Appellants argue Article 7, Section 138 arbitrarily allows a class of industry to "sneak into" a commercial district rather than be classified as industry under Article 7, Section 144 of the Franklin County Planning and Zoning Unified Land-Use Regulations ("Article 7, Section 144"). They contend buffers, in this circumstance, are a requirement under Article 7, Section 144 because Article 13, Section 295 of the Franklin County Planning and Zoning Unified Land-Use Regulations calls for borders when industry is next to residential houses. In contrast, the Commission points out "concrete product manufacturing" is specially listed in "manufacturing, heavy" under Article 2, Section 15 of the Franklin County Planning and Zoning Unified Land-Use Regulations, so the fact manufacturing use may be in a commercial district is of no weight when considering the buffer required. Additionally, the Commission asserts Article 7, Section 138 is rationally related to Franklin County's legitimate goal of improving the economic conditions in the County and implementing its plan for long term development and growth through its Master Plan.

We find Appellants have not established Article 7, Section 138 is completely irrational, and therefore, they have not overcome the presumption that the regulation has a rational basis. *See Labrayere*, 458 S.W.3d at 332. Therefore, Appellants have not demonstrated the rezoning violates the Equal Protection Clauses of the U.S. and Missouri Constitution. Point two on appeal is denied.

11

## 2. Whether Article 7, Section 138 Violates the Due Process Clauses Because it is Facially Unconstitutional

In Appellants' third point on appeal, they allege the rezoning violates the Due Process Clauses of the U.S. and Missouri Constitution because Article 7, Section 138 is facially unconstitutional as it defines a commercial district to include industrial manufacturing. Appellants specifically assert the regulation, (a) violates Due Process because of vagueness; and (b) bears no substantial relationship to the health, safety, morals, or the public welfare. We disagree.

### a. Vagueness

We first turn to Appellants' contention that Article 7, Section 138 violates Due Process because of vagueness.

"[I]n reviewing vagueness challenges, the language is evaluated by applying it to the facts at hand." *Turner v. Missouri Dept. of Conservation*, 349 S.W.3d 434, 443 (Mo. App. S.D. 2011) (citing *Feldhaus v. State*, 311 S.W.3d 802, 806 (Mo. banc 2010)). Additionally, "neither absolute certainty nor impossible standards of specificity are required in determining whether terms are impermissibly vague." *Turner*, 349 S.W.3d at 444 (citing *Cocktail Fortune, Inc. v. Supervisor of Liquor Control*, 994 S.W.2d 955, 957 (Mo. banc 1999)). Further, "the hypothetical approach is not the appropriate standard for reviewing whether a regulation is void for vagueness." *Id*. "So long as the terms or words used in the regulation are of common usage and are understandable by persons of ordinary intelligence, the regulation satisfies the constitutional requirement of definiteness and certainty." *Bell v. Board of Educ. of City of St. Louis*, 711 S.W.2d 950, 953 (Mo. App. E.D. 1986).

Appellants claim the inclusion of manufacturing in both CA3 and an Industrial Development Zoning District ("ID") creates ambiguity in which types of manufacturing are

12

appropriate in which zones such that a common citizen would not know which manufacturing business belongs in each zone. Appellants contend manufacturing is industrial and not commercial. We disagree with Appellants under the circumstances of this case. The purpose and permitted uses of Franklin County's CA3 Zoning District is found in Article 7, Section 138. The CA3's purpose is to "provide locations for a wide range of commercial, retail, service, and manufacturing activities serving a large community trade area." Additionally, a permitted use under CA3 is manufacturing, light and heavy. Specifically listed under "manufacturing, heavy" is "concrete product manufacturing." We are not convinced how a person of ordinary intelligence could fail to understand the above Franklin County Land Use sections, and therefore, they satisfy the constitutional requirement of definiteness and certainty.[2] *See Bell*, 711 S.W.2d at 953.

### b. Substantial Relationship to the Health, Safety, Morals, or the Public Welfare

Appellants further contend Article 7, Section 138 bears no substantial relationship to the health, safety, morals, or the public welfare, because it permits polluting industries to be located adjacent to residential areas without requiring special use permits. Additionally, they argue having incompatible land uses adjoining residential areas can decrease the value of neighboring homes, decrease the quality of life for adjacent citizens through noise and general disruption, and decrease the health and safety of those citizens through pollution.

The Commission argues the Master Plan has made economic development a priority which the CA3 Zoning District will assist with. Further, the rezoning helps accomplish the goals set forth in the Master Plan by contributing to a diverse economy within Franklin County that

---

[2] We dispose of Appellants' argument that concrete batch manufacturing is industrial and not commercial so it should not be allowed in a CA3 Zoning District. Because Appellants have failed to cite any controlling legal authority to support their argument, and we can find no such legal authority, it has no merit.

13

focuses on manufacturing sectors which will potentially increase employment opportunities and contribute revenue to the county tax base. Additionally, the Property in question prior to the rezoning was CD – not residential. Further, there was testimony presented that showed the surrounding environment would be substantially mitigated by the Buffer between Landvatter's plant and any residences.

We cannot say with certainty, under these circumstances, that no substantial relationship to the public health, safety, morals, or general welfare exists. *See State ex rel. Helujon*, 964 S.W.2d at 536. "Any uncertainty about the reasonableness of a zoning regulation must be resolved in the government's favor. . .." *JGJ Properties*, 303 S.W.3d at 647 (citation omitted).

      **c.**      **Conclusion to Point Three on Appeal**

Based on the foregoing, Appellants have failed to demonstrate Article 7, Section 138 is facially unconstitutional under the Due Process Clauses of the U.S. and Missouri Constitution. Point three on appeal is denied.

**3.**      **Whether Article 7, Section 138 Violates the Due Process Clauses Because it is Unconstitutional as Applied**

In Appellants' fourth point on appeal, they allege the rezoning violates the Due Process Clauses of the U.S. and Missouri Constitution as applied because Article 7, Section 138 arbitrarily classifies a concrete plant as commercial activity, rather than as industry. We find it is at least fairly debatable.

Appellants have failed to cite any controlling authority which supports their argument that Franklin County cannot in its legislative discretion list manufacturing as a permitted use in its CA3 Zoning District. Also, Appellants have failed to cite to authority which states manufacturing and industrial uses cannot be contained in different zones. "Any uncertainty about the reasonableness of a zoning regulation must be resolved in the government's favor. . .."

14

*JGJ Properties*, 303 S.W.3d at 647 (citation omitted). Further, "if the issue is at least fairly debatable, the reviewing court may not substitute its opinion for that of the zoning authority which enacted the challenged [regulation]." *Id*. In this case, we find it is at least fairly debatable whether there is a substantial relationship to the public health, safety, morals, or general welfare. *See State ex rel. Helujon*, 964 S.W.2d at 536. Therefore, Appellants have failed to demonstrate Article 7, Section 138 is unconstitutional as applied under the Due Process Clauses of the U.S. and Missouri Constitution. Point four on appeal is denied.

### D.     Appellants' Abdicated Authority Claim

In Appellants' fifth point on appeal, they allege the rezoning was illegal because the Commission abdicated its authority to Landvatter and allowed the private corporation to regulate itself in violation of the law. In support, Appellants cite to authority providing "a municipal corporation may not delegate, contract away or surrender its legislative authority." *Farm & Home Inv. Co. v. Gannon*, 622 S.W.2d 305, 307 (Mo. App. E.D. 1981).

As noted in our standard of review, rezoning is a legislative act. *State ex rel. Mason*, 551 S.W.3d at 57. The Commission exercised its legislative authority when it decided to rezone the Property. Additionally, the Commission evaluated the application to rezone, reviewed the evidence presented by proponents and objectors, and granted the rezoning application after determining it complied with the Master Plan and was for the public benefit. Appellants have failed to convince this Court that the Commission abdicated its authority. Point five on appeal is denied.

### E.     Appellants' Sixth and Final Claim

In Appellants' sixth and final point on appeal, they contend the rezoning bears no substantial relationship to the health, safety, morals, or general welfare, and the rezoning violates

15

Franklin County Planning and Zoning Unified Land Use Regulations, the Master Plan, and section 64.850 RSMo 2016. Additionally, Appellants argue the Commission's rezoning decision is an abuse of discretion, is not supported by competent and substantial evidence, and was arbitrary and capricious.

A two-step analysis is used when determining the validity of a zoning decision. *Lenette Realty & Inv. Co. v. City of Chesterfield*, 35 S.W.3d 399, 405 (Mo. App. E.D. 2000). "First, the court determines whether the challenging party has presented sufficient evidence to rebut the presumption that the present zoning [decision] is reasonable. Then, if the presumption has been rebutted, the court determines whether the government's evidence establishes that the reasonableness of the zoning [decision] is 'fairly debatable.'" *Id*. at 405-06.

Additionally, zoning decisions are presumed to be valid. *JGJ Properties*, 303 S.W.3d at 647. "Any uncertainty about the reasonableness of a zoning [decision] must be resolved in the government's favor. . .." *Id*. (citation omitted). Further, "if the issue is at least fairly debatable, the reviewing court may not substitute its opinion for that of the zoning authority. . .." *Id*. (citation omitted). The evidence is viewed in the light most favorable to the government's decision. *Id*. at 647-48.

For purposes of this appeal only, we find it is not necessary to discuss the first step in the analysis and we therefore proceed to the last step.[3] We believe the reasonableness of the rezoning is at least fairly debatable under the circumstances of this case. While Appellants contend their property values will decline, there was evidence presented showing residential homes near Landvatter's Kirkwood plant, which are closer in proximity then Appellants' homes,

---

[3] Appellants' main arguments to rebut the presumption that the rezoning is reasonable can be summarized as the following: (1) they argue home prices will decrease; (2) their enjoyment of the land will be compromised; and (3) the plant will result in pollution damaging the area.

16

were in the two hundred thousand to seven hundred-thousand-dollar range. There was testimony presented about how the Buffer would help alleviate the noise and dust from the concrete batch plant. Additionally, there was evidence about how a resident already heard noise from the train tracks and the interstate. Regarding pollution concerns, there was testimony presented that Landvatter would be subject to DNR regulations and quarterly inspections. There was also a plan by Landvatter to add additional water retention basins to prevent water from the plant leaving the Property. While there were noise complaints from Landvatter's other concrete batch plants presented to the Commission, there was evidence that showed Landvatter was never found to be in violation of St. Louis County regulations.

Further, there was evidence regarding the location of the rezoning. The properties between Old Route 66 and Old Gray Summit Road are zoned CD and across the road is zoned Commercial Activity Highway Service. Properties to the west of and right across the street from Landvatter's Property includes a MoDOT storage facility, a heavy vehicle repair business, a gas station, and an Ameren Substation. The east of the proposed rezoning is bordered by actively used railroad tracks. To the south and southwest of the Property are residential properties where Appellants live. Lastly, immediately to the north of the Property is Interstate 44. The surrounding land generally is commercial in nature.

Additionally, testimony by contractor Tom Kelp showed Landvatter's concrete is his preferred provider. Kelp stated concrete is a perishable product that can be affected by long truck drives. He stated having a concrete batch plant in the proposed location of the rezoning would be an ideal location because there is no other concrete place nearby.

Because we find the rezoning decision was at least fairly debatable,[4] we may not substitute our opinion for that of the Commission. *JGJ Properties*, 303 S.W.3d at 647; *see also Lenette*, 35 S.W.3d at 405-06. Therefore, point six on appeal is denied.

### III.    CONCLUSION

For the reasons stated above, we affirm the Commission's decision to rezone the 12.68 acres of Landvatter's Property from CD to CA3.

_____

ROBERT M. CLAYTON III, Presiding Judge

Robert G. Dowd, Jr., J., and
Michael E. Gardner, J., concur.

---

[4] Appellants argue we should find the rezoning in this case was not fairly debatable pursuant to *Fairview Enterprises, Inc. v. City of Kansas City*, 62 S.W.3d 71, 74-83 (Mo. App. W.D. 2001). We disagree, because the circumstances in *Fairview* are distinguishable from those in this case. Here, the issue was whether the Property zoned CD could be rezoned CA3 and a concrete batch plant would operate on the rezoned Property. *Fairview* did not involve such an issue or circumstances but instead involved whether an entire area surrounded by agricultural and low density housing (GP-7) could be rezoned to General Industry (GP-1) and an asphalt plant would relocate and operate on the newly rezoned property. *Id*. at 75. The Court found the rezoning was not fairly debatable. *Id*. at 83. The current circumstances are dealing with a commercial area and not agricultural or low-density housing like in *Fairview*. Accordingly, Appellants reliance on *Fairview* is misplaced.